656 So.2d 790 (1995)
Henry C. (Sonny) PALMER and Shirley Palmer
v.
ANDERSON INFIRMARY BENEVOLENT ASSOCIATION d/b/a Jeff Anderson Regional Medical Center.
No. 91-CA-00654-SCT.
Supreme Court of Mississippi.
February 23, 1995.
Rehearing Denied July 20, 1995.
*791 Henry Palmer, Palmer Wright & Williamson, Meridian, for appellant.
William J. Gunn, Williams Gunn & Crenshaw, Meridian, for appellee.
George H. Ritter, Wise Carter Child & Caraway, Jackson, MS; George Q. Evans, Wise Carter Firm, Jackson, for amicus curiae.
En Banc.
PITTMAN, Justice, for the Court:

STATEMENT OF THE CASE
This is an appeal from a summary judgment entered by the Circuit Court of Lauderdale County, Mississippi, on May 29, 1991, against Henry C. (Sonny) Palmer[1] and his wife, Shirley Palmer, (hereinafter the Palmers) and in favor of Anderson Infirmary Benevolent Association d/b/a Jeff Anderson Regional Medical Center (hereinafter Anderson Hospital). The Palmers filed suit against Dr. William J. Anderson, III and Anderson Hospital for medical negligence. Motions for Summary Judgment were filed by both Dr. Anderson and Anderson Hospital, and a Motion for Partial Summary Judgment was filed by the Palmers. The trial court denied the motions for summary judgment filed by Dr. Anderson and the Palmers, but granted the hospital's motion for summary judgment. The trial court found that there was no genuine issue as to any material fact and that the Palmers had failed to prove one of the essential elements of the case for which they would have the burden at trial, thus making Anderson Hospital entitled to summary judgment as a matter of law. Feeling aggrieved, the Palmers appeal to this Court asserting the following issue:
HAS THE APPELLANT FAILED TO ESTABLISH A CAUSAL CONNECTION BETWEEN THE BREACH OF DUTY AND THE DAMAGES COMPLAINED OF?
(A) IS MEDICAL EXPERT TESTIMONY NEEDED TO ESTABLISH CAUSAL CONNECTION IN THIS CASE?
(B) HAS MEDICAL EXPERT TESTIMONY ESTABLISHED CAUSAL CONNECTION IN THIS CASE?
(C) IS THIS A CASE OF NEGLIGENCE PER SE?

STATEMENT OF FACTS
On January 22, 1987, Sonny Palmer, then fifty-one years of age, was a patient in Anderson Hospital under the care and treatment of William J. Anderson, III, M.D. Dr. Anderson diagnosed Sonny as having "a *792 large carcinoma of the rectum." Dr. Anderson informed the Palmers that Sonny needed surgery to determine how extensive the cancer was and that he would probably have to have a colostomy. The Palmers requested that Dr. Bill Thorton assist him during the operation. They relied on Dr. Anderson to get in touch with Dr. Thorton. The next day, January 23, 1987, Dr. Anderson, without an assistant surgeon present, performed an exploratory laparotomy to determine if Sonny's tumor was resectable. Dr. Anderson determined that it was "an inoperable tumor from the standpoint of an abdominal perineal resection." He went ahead and performed a colostomy "to alleviate any obstruction to the bowel flow and also to help correct or alleviate any bleeding [Sonny] may have since the intestinal flow past the tumor does aggravate any bleeding tendency that may be there." Dr. Anderson performed this surgery without the presence of an assistant surgeon. He stated that there are two stages to an abdominal perineal resection and that the first stage is performed alone.
The Palmers contend that Dr. Anderson was negligent in the performance of the colostomy and the placement of the stoma. During his deposition, Sonny testified to his problems with the stoma:
A. Well, sir, it was a stoma is what it's called, I mean, you know, the part on your stomach. Stoma. You got something like a dam around it. I mean, in other words, your skin, you know, where you appliance fits around, you know, goes down on your stomach, it's kind of like a round dam. In other words, it comes up the way it's suppose to be. But this one it goes back in my stomach.
Q. There's no dam?
A. No, sir. It's nothing. It's just  instead of being not even flat, I mean it sinks in. And I can't  I can't even irrigate it right. We have to take towels and, I mean, it's just the situation that I can't  I bend over and it pops off. It's just a situation that's 
Shirley Palmer, Sonny's wife, testified during her deposition that she could not leave Sonny alone for more than a couple of hours at a time because his appliance came off easily and she had to put it back on. At the time of the deposition Sonny planned to have the colostomy redone once he felt strong enough.
Dr. Alan Timmcke, a colon and rectal surgeon at the Ochsner Clinic in New Orleans, Louisiana, and the Palmers' only expert witness, testified by deposition and two affidavits. Dr. Timmcke first saw Sonny on October 12, 1987. On October 16, 1987, Dr. Timmcke performed a pelvic exenteration on Sonny. This consisted of the removal of the rectum, prostate, the seminal vesicles, the bladder and everything surrounding the tumor. As of the time of his deposition Sonny's cancer was in remission.
When asked to explain the proper procedure for deciding where to place a stoma Dr. Timmcke answered:
Well, usually the patient is examined in different positions, lying flat, seated and standing in order to determine where the natural skin creases in the abdomen are, to see where bony prominences such as the hip bones, and those things would come into the picture to see what happens with shift in the abdominal wall, with gravity and standing, all to try and find a  an area on the abdomen that's flat enough to allow an appliance to remain in place and not  not want to come off.
* * * * * *
... [W]hen the skin creases or folds beneath the appliance, that's the point at which the glue and the face plate of the appliance can separate, and once they start separating then it's difficult to control the  the stool and keep it flowing into the  into the bag or the appliance as you had intended and it tends to leak out underneath.
* * * * * *
It can cause problems with odor and soilage of a person's clothes and all sorts of things that would be unacceptable.
* * * * * *
Well, Sonny's original colostomy is refracted, means it's  it has pulled down inward towards the abdominal cavity and is not *793 flush or flat with the skin. It's also in a crease or a dimple in the skin.
Dr. Timmcke was questioned concerning the absence of a second surgeon during the surgery performed by Dr. Anderson at Anderson Hospital.
Q. Had an additional surgeon been present when Sonny's first surgery was conducted in January 1983 [sic], was there a potential or possibility that a better or different result could have been obtained?
MR. CARTER:
Object to the form.
MR. GUNN:
Object.
THE WITNESS:
I don't think I can answer that question, either. It would depend on the experience and expertise of that surgeon and 
EXAMINATION BY MR. PALMER:
Q. That is an unfair question because we can't go back and do that, but is that potential forever lost?
MR. GUNN:
Same objection.
MR. CARTER:
Same objection.
THE WITNESS:
No, not necessarily. The  The problem with that  that question is that the additional surgeon might not have any more expertise than the surgeon who was there and then would not add anything to the potential of treating the tumor. It's just not possible to answer that question.
Wanda Cooper, Medical Staff Coordinator for Anderson Hospital, testified during her deposition that as a licensed hospital in Mississippi, Anderson Hospital had agreed to adopt the Minimum Standards of Operation for Mississippi Hospitals. Each department within the hospital set up standards in addition to these. Dr. Anderson testified that it was within the surgeon's discretion as to whether an assistant is needed during surgery. Under Anderson Hospital's general rules for surgery, "the attending surgeon is responsible for having a suitable assistant in each case as he deems necessary."
Minimum Standards of Operation for Mississippi Hospitals, Chapter 12, Rule 1202.3 reads as follows: "In any procedure with unusual hazard to life, there shall be present and scrubbed as first assistant a physician designated by the credentials committee as being qualified to assist in major surgery."
The lower court judge in his Judgment Granting Motion of Anderson Infirmary Benevolent Association For Summary Judgment, set out his findings of fact. He then made his conclusions of law and cited authority to support those conclusions. The lower court held in part:
In a medical malpractice action the Plaintiff has the burden of establishing the content and details of the standard of care to which a physician or hospital is held, and the burden at trial of proving failure to conform to that standard.
* * * * * *
In order for the Plaintiff to prevail at trial and on motions for summary judgment there must be proof of the following: (a) duty, (b) breach, (c) causal connection and (d) damages... . [T]his case is an alleged negligence action as to the hospital.
* * * * * *
For purposes of this Rule 56 Motion only, the Court will assume that the Plaintiff has provided significant probative evidence demonstrating a breach of duty on the part of the Defendant hospital in failing to have two surgeons in the operating suite at the time of Plaintiff's surgery because such procedure constituted an unusual hazard to life. The Court looks next to the question of causation or the existence of a causal relationship between the negligent act and the Plaintiff's resulting damages and/or injuries.
* * * * * *
The sole expert relied upon in this case by Plaintiff to prove the essential elements of this negligence action against Defendant, Hospital, is Dr. Alan Timmcke who testified through a deposition and through two sworn affidavits. The Court in reviewing Dr. Timmcke's deposition and affidavits *794 finds that at no time did Dr. Timmcke testify that there was a causal relationship between the failure of the hospital to have an additional surgeon present during Plaintiff's first surgery in January, 1987 and Plaintiff's alleged resulting damages and injuries. Without this testimony the Plaintiff has totally failed to prove one of the essential elements of his case to which he would bear the burden at trial.
The court therefore finds that there is no genuine issue as to any material fact and that the Defendant, Anderson Infirmary Benevolent Association d/b/a Jeff Anderson Regional Medical Center is entitled to Summary Judgment as a matter of law.
The Plaintiff has also alleged that Defendant Hospital failed to provide competent and qualified staff members and breached its contract to provide same in line with acceptable and proper medical standards. After reviewing the Deposition and affidavits of Dr. Alan E. Timmcke, the Court finds that the Plaintiff has failed to produce evidence of significant and probative value as to this contention. Therefore, the Court finds that there is no genuine issue of material fact as to the allegation of the Plaintiff and the Defendant, Hospital, is entitled to summary judgment as a matter of law.

LAW

Standard of Review
In determining whether the trial court properly granted a motion for summary judgment this Court conducts a de novo review of the record. Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss. 1993); Mantachie Natural Gas District v. Mississippi Valley Gas Company, 594 So.2d 1170, 1172 (Miss. 1992).
A trial court may grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56. A fact is material if it "tends to resolve any of the issues, properly raised by the parties." Webb v. City of Newton, 583 So.2d 946, 949 (Miss. 1991) (citing Mink v. Andrew Jackson Casualty Ins. Co., 537 So.2d 431, 433 (Miss. 1988) (quoting Mississippi Road Supply v. Zurich-American Insurance Co., 501 So.2d 412, 414 (Miss. 1987)). The evidence must be viewed in the light most favorable to the non-moving party. If, in this view, the moving party is entitled to a judgment as a matter of law, then summary judgment should be granted in his favor. Otherwise, the motion should be denied. Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983).
Morgan v. City of Ruleville, 627 So.2d 275, 277 (Miss. 1993).
In a negligence action, the plaintiff bears the burden of producing evidence sufficient to establish the existence of the conventional tort elements of duty, breach of duty, proximate causation, and injury. Therefore, in a summary judgment proceeding, the plaintiff must rebut the defendant's claim (i.e., that no genuine issue of material fact exists) by producing supportive evidence of significant and probative value; this evidence must show that the defendant breached the established standard of care and that such breach was the proximate cause of her injury.
Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d 1346, 1355 (Miss. 1990). Finally, summary judgment should be granted with great caution. Womble v. Singing River Hosp., 618 So.2d 1252, 1256 (Miss. 1993) (citing Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983)).

(A) IS MEDICAL EXPERT TESTIMONY NEEDED TO ESTABLISH CAUSAL CONNECTION IN THIS CASE?
For a plaintiff to recover in a negligence action the conventional tort elements of duty, breach of duty, proximate causation and injury must be proven by a preponderance of the evidence. Palmer, 564 So.2d at 1355; Phillips v. Hull, 516 So.2d 488, 491-92 (Miss. 1987). The Palmers contend that expert testimony showing a causal connection *795 between the breach of duty and damages is not needed in this case because the issue is within the common knowledge of laymen.
Our general rule is that the negligence of a physician may be established only by expert medical testimony with the exception for instances where a layman can observe and understand the negligence as a matter of common sense and practical experience. Walker v. Skiwski, 529 So.2d 184, 187 (Miss. 1988). See also Palmer, 564 So.2d at 1355; Phillips v. Hull, 516 So.2d 488, 491 (Miss. 1987); Cole v. Wiggins, 487 So.2d 203, 205 (Miss. 1986). "Lay testimony is sufficient to establish only those things that are purely factual in nature or thought to be in the common knowledge of laymen." Drummond v. Buckley, 627 So.2d 264, 268 (Miss. 1993). An expert is needed to show how a breach of the physician's duty proximately caused the plaintiff's injury. Palmer, 564 So.2d at 1355; Hull, 516 So.2d at 491; Hall v. Hilbun, 466 So.2d 856, 870-73 (Miss. 1985).
As the court below stated, "[T]he action against Defendant Hospital is based upon the allegation that the hospital failed to require ... two surgeons to be present when the surgery in question was performed and failed to insure that the surgeon who did perform the surgery was competent and qualified to perform the surgery that was needed." We note that the nature of the plaintiff's contentions against the hospital fall within the realm of negligence. Miss. Code Ann. § 41-9-17 provides that the agency responsible for the licensing of hospitals in the State adopt rules, regulations and standards for those hospitals. These rules and regulations are compiled in Minimum Standards of Operation for Mississippi Hospitals. Section 12 of those standards deals with surgery and anesthesia. Rule 1202.3 reads, "[i]n any procedure with unusual hazard to life, there shall be present and scrubbed as first assistant a physician designated by the credentials committee as being qualified to assist in major surgery." (emphasis added)
For this discussion, we will assume that Anderson Hospital breached its duty of care by not requiring two surgeons to be present during Sonny's first operation (the colostomy) in January 1987, and that Sonny sustained damages because of that operation. With one element of negligence remaining at issue, the Palmers must still show that the breach of duty was the proximate cause of the injury.
The Palmers concluded that no expert testimony was needed to show a causal connection because it was logical that had another surgeon been present that the stoma would not have been placed in a skin fold and there would have been no injuries. They argued that this is within a layman's common knowledge. We do not agree that expert testimony was not necessary to establish the causal connection between the alleged breach of duty of the Defendant and the Plaintiff's injuries. Such a determination would be contrary to numerous recent cases in which this Court has set forth the requirement that "[t]he person charging negligence must show that the other party, by his act or omission, has violated some duty incumbent upon him and thereby caused the injury complained of." Magnolia Hospital v. Moore, 320 So.2d 793, 800 (Miss. 1975) (quoting DeLaughter v. Womack, 250 Miss. 190, 208, 164 So.2d 762, 769 (1964)). We additionally decline to find that this case falls within the "layman" exception; although, it may not be difficult for laymen to see a causal connection in this case.

(B) HAS MEDICAL EXPERT TESTIMONY ESTABLISHED CAUSAL CONNECTION IN THIS CASE?
In our de novo review, this Court looks to see if the moving party has demonstrated that no genuine issue of fact exists. Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss. 1993). "A motion for summary judgment should be overruled unless the trial court finds, beyond a reasonable doubt, that the plaintiff would be unable to prove any facts to support his claim." Id. at 599 (citing McFadden v. State, 580 So.2d 1210 (Miss. 1991)). The lower court is prohibited from trying the issues; "it may only determine whether there are issues to be tried." Id. (citing Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983)). The non-moving party, in this case the Palmers, has the burden of providing "`supportive evidence of *796 significant and probative value' in opposition to the motion for summary judgment." Daniels, 629 So.2d at 600 (citing Palmer, 564 So.2d at 1355).
"There is no magic form to which a plaintiff's supporting expert opinion must conform, so long as its import is apparent." Kelley v. Frederic, 573 So.2d 1385, 1389 (Miss. 1990). We find the import of Dr. Timmcke's testimony to be readily apparent. In fact, in the case sub judice, the lower court assumed that the "Plaintiff ha[d] provided significant probative evidence demonstrating a breach of duty on the part of the Defendant hospital in failing to have two surgeons in the operating suite at the time of Plaintiff's surgery because such procedure constituted an unusual hazard to life."
The Palmers presented only one expert's testimony. When asked if the injury would have been prevented if there had been another surgeon present during Sonny's first surgery, Dr. Timmcke replied, "I don't think I can answer that question, either. It would depend on the experience and expertise of that surgeon...." It is clear to us that the physician tried to answer the question honestly, that without further information, Dr. Timmcke was unable to give a definite opinion. This in our mind establishes that there was sufficient testimony to create a jury question regarding the causal connection between the absence of a second surgeon and the injuries sustained by Palmer. Furthermore, it is illogical to us that the lower court could have denied the summary judgment of the doctor and granted the summary judgment of the hospital where the Palmers alleged (1) that the hospital failed to insure that Dr. Anderson was competent and qualified to perform the surgery that was needed and (2) that the Hospital failed to enforce their rules requiring the presence of a second physician.
"Summary judgment is not a substitute for trial regarding disputed issues of fact." Barner v. Gorman, 605 So.2d 805, 808 (Miss. 1992). Once a witness is qualified as an expert to render expert testimony, then it is within the province of the trier of fact to give weight and credibility to the testimony. We reverse the lower court's summary judgment on the issue of negligence. We find that the evidence sufficiently supported the Palmers' allegations against the hospital to avoid summary judgment. The trial court should have allowed the jury to decide if the facts supported the Palmers' suit against Anderson Hospital.

(C) IS THIS A CASE OF NEGLIGENCE PER SE?
Lastly, the Palmers contend that when the lower court found Anderson hospital failed to comply with § 1202.3 of the Minimum Standards of Operation for Mississippi Hospitals, by not requiring the presence of two surgeons during Sonny's first operation then that breach was negligence per se. They cite Boyer v. Tenn. Tom Constructors, 702 F.2d 609, 611 (1983), a Mississippi diversity case, in which the Fifth Circuit held:
Mississippi recognizes the doctrine of negligence per se, which in essence provides that breach of a statute or ordinance renders the offender liable in tort without proof of a lack of due care. See Otto v. Specialties, Inc., 386 F. Supp. 1240 (N.D.Miss. 1974); Haver v. Hinson, 385 So.2d 605 (Miss. 1980); Miss. Power Co. v. Jones, 369 So.2d 1381 (Miss. 1979). Violation of a regulatory or penal statute such as § 65-1-45 constitutes negligence per se and will support a cause of action in tort where the plaintiff is within the class protected by the statute, and the harm sustained is the type sought to be prevented by the statute. Haver v. Hinson (sic).
Assuming that Anderson hospital did breach a regulation and Sonny was within the class protected by that regulation he still must show that the violation proximately caused his injury. See Otto v. Specialties, Inc., 386 F. Supp. 1240, 1244 (N.D.Miss. 1974). In Hasson v. Hale, 555 So.2d 1014 (Miss. 1990), a drunk driver was involved in a car accident in which the driver of another car was killed. In affirming the lower court's refusal to grant a peremptory instruction on liability, this Court held:
Hale's intoxication was negligence per se, and we agree that the plaintiffs were entitled *797 to an instruction that Hale was negligent as a matter of law due to intoxication. As to whether such negligence proximately caused the accident, a jury question remained.
555 So.2d at 1016.
The plaintiff still must show that the negligence proximately caused the injury complained of. In the case sub judice, even if the court determined that Anderson Hospital's failure to require two surgeons during Sonny's first surgery was negligence per se, the issue of whether the Palmers established a causal connection between the alleged negligence of the Defendant and the Plaintiff's injuries still must be proven. The central contention involved in this review is whether the Palmers presented significant and probative evidence establishing a causal connection. Since we have found here that sufficient evidence was presented to survive the motion for summary judgment, we find the issue of negligence per se irrelevant and without merit.

CONCLUSION
In order to survive a motion for summary judgment in a negligence action the plaintiff must put on evidence showing that the defendant breached a duty of care and that breach proximately caused his injury. The Palmers put on sufficient expert testimony with regard to the elements involved in the negligence action against Anderson Hospital. More specifically, that the Palmers established a causal connection between the hospital's alleged breach of duty and the complained of injury and damages. Therefore, we find that the Order granting summary judgment is reversed and that the case is remanded for trial.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN and McRAE, JJ., concur.
HAWKINS, C.J., specially concurs with separate written opinion joined by DAN M. LEE and PRATHER, P.JJ., and BANKS, J.
BANKS, J., concurs in part with separate written opinion joined by DAN M. LEE, P.J., and SULLIVAN and McRAE, JJ.
JAMES L. ROBERTS, Jr., J., dissents with separate written opinion joined by SMITH, J.
HAWKINS, Chief Justice, specially concurring:
In this extremely close case, Justices Pittman and Roberts have each demonstrated considerable thought in voicing their views. I am persuaded to join the majority because this matter is at the summary judgment stage, and in reversing the game is by no means over for Anderson Hospital as it would be for the plaintiffs if we affirmed. Also, there is an additional support for reversing, albeit tenuous.
As I gather from both opinions, there was clearly enough evidence to make a jury issue on the negligence of Dr. Anderson. At the same time, again as I gather from the opinions, this was not a case of respondeat superior, no one is claiming Dr. Anderson was the agent of the hospital, or that any negligence of the former should be imputed to the latter. The sole claim of negligence against the hospital was its failure to abide by regulations requiring the presence of two surgeons during Mr. Palmer's surgery. Clearly this was negligence, but was there any causal connection between this and Palmer's injury?
Dr. Timmcke, the surgeon witness for Mr. Palmer, candidly acknowledged he could not answer whether there was any causal connection, noting it would depend on the expertise of the second surgeon in attendance. There is nothing whatever surprising or wrong about this answer, and this supports Justice Roberts' dissent. Would another surgeon have warned Dr. Anderson? Of course, no one can ever know, because that second surgeon was not there, and never will be.[1]
There remains, however, that old basic common-sense saying, "two heads are better than one." This is one raison d'etre for the *798 regulation in the first place. Why are two policemen required in certain instances to patrol rather than one, or two nurses to be on duty rather than one, or two people to be on watch, two lawyers on each side in certain trials?
A jury has a right to determine whether or not in this instance that missing second surgeon reasonably would have made a difference in Mr. Palmer's fate.
DAN M. LEE and PRATHER, P.JJ., and BANKS, J., join this opinion.
BANKS, Justice, concurring in part:
I agree with the result reached by the majority; however, I write to add a few words of explanation.
I believe that the answer to the caveat expressed by the plaintiff's expert, concerning the experience and expertise of the second physician who was not present, should be supplied by reference to an assumption dictated by a logical construction of the hospital's obligations, or as the plaintiff argues, "a legal presumption." That is, where the hospital's regulations require the presence of a second physician in certain life threatening situations, it should be assumed that in order to meet this duty the hospital should assure that the second physician has the requisite qualifications for the task. In fact, the regulation itself requires that the attending physician be "qualified to assist in major surgery." The question, then, is whether a physician of the skills and experience sufficient to the task of attending such an operation as the second physician would have in the exercise of due care prevented the injury. That is a question left unasked and unanswered. It is the duty of the moving party to show that there are no disputed facts which if resolved against him would entitle the non-moving party to judgment. Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983). Where the record is unclear the doubt should be resolved in favor of trial on the merits. Id. See also Donald v. Reeves Transport Co. of Calhoun Georgia, 538 So.2d 1191, 1195-96 (Miss. 1989) (Summary judgment should be granted with great caution. Even where the summary judgment test appears to have been met in its entirety, a judge is not ordinarily required to grant a summary judgment).
DAN M. LEE, P.J., and SULLIVAN and McRAE, JJ., join this opinion.
JAMES L. ROBERTS, Jr., Justice, dissenting:
I agree with the majority's holding that this is not a case which lies within the "layman" exception to the rule that medical negligence must be established by expert testimony. I also agree with the majority's handling of the negligence per se issue. It is from their decision to reverse summary judgment because they feel the expert testimony was sufficient to establish a jury question that I dissent. I also disagree with the majority's reasoning that under the circumstances of this case, since there was enough evidence to withstand a summary judgment motion by the doctor then it is illogical to hold there was insufficient evidence to withstand a summary judgment motion by the hospital as well. The majority offers no authority to support their reasoning in this matter.
The majority states:
Furthermore, it is illogical to us that the lower court could have denied the summary judgment of the doctor and granted the summary judgment of the hospital where the Palmers alleged (1) that the hospital failed to insure that Dr. Anderson was competent and qualified to perform the surgery that was needed and (2) that the Hospital failed to enforce their rules requiring the presence of a second physician. (emphasis theirs).
The majority seems to place great significance on the belief that the Hospital violated its own rules requiring the presence of a second physician. I do not believe that the Hospital did violate its own rules. As the majority points out in its Statement of Facts, the Hospital's general rules for surgery places the responsibility for having an assistant present on the attending surgeon and leaves it to his discretion as to when a second physician is necessary. The Palmers told Dr. Anderson who they wanted as the assistant *799 surgeon and it was he, not the Hospital, that failed to comply with the Hospital's rule and the Palmers' wishes.
I have great sympathy for the Palmers as a result of Mr. Palmer's condition. The evidence would certainly indicate he suffered because of negligence. But was it the hospital's negligence? That is generally a question a jury should decide. However, before the question can get to a jury, the plaintiffs must withstand the Hospital's Motion for Summary Judgment. To do this they must establish that a genuine issue of material fact exists by putting on evidence "sufficient to establish the existence of the conventional tort elements of duty, breach of duty, proximate causation, and injury." Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d 1346, 1355 (Miss. 1990). See also Morgan v. City of Ruleville, 627 So.2d 275, 277 (Miss. 1993).
The only one of these elements which concerns us here is proximate causation. The majority concedes that expert testimony is needed to establish a causal connection, but they go on to say "it is illogical to us that the lower court could have denied the summary judgment of the doctor and granted the summary judgment of the hospital... ." I disagree with this statement by the majority and I do not believe, from a review of the record, that the testimony of the Palmers' expert was sufficient to "create a jury question regarding the causal connection between the absence of a second surgeon and the injuries sustained by Palmer."
Doctor Timmcke, the Palmers' expert, failed to make any causal connection. When asked if the injury would have been prevented if there had been another surgeon present during Palmer's first surgery, Dr. Timmcke replied, "I don't think I can answer that question, either. It would depend on the experience and expertise of that surgeon and ." A second surgeon would only have assisted Dr. Anderson. There is no evidence to show that he still would not have made all the decisions concerning the placement of the stoma. Clearly, the Palmers offered absolutely no evidence to show the absence of a second surgeon during the operation was the proximate cause of Mr. Palmer's injury.
Although it seems clear that Mr. Palmer suffered an injury, this Court can not let sympathy outweigh the law. The law clearly says a plaintiff must put on sufficient evidence of all the elements of negligence, not just most of them. The Palmers put on no evidence to establish a causal connection. Accordingly, I would affirm the lower court's grant of summary judgment in favor of the hospital.
SMITH, J., joins this opinion.
NOTES
[1] For clarification purposes it should be noted that Henry Palmer, the appellants' attorney, and Henry (Sonny) Palmer, the appellant, are not the same person.
[1] I assume, however, from Dr. Timmcke that if he had been there, he would have warned the doctor.