GRIFFIS, J.,
for the Court.
¶ 1. On January 13, 2001, Robert Gary Rogers (“Rogers”) died as a result of injuries he suffered after falling from a wall-mounted ladder. A wrongful-death action was filed by Charlene Rogers, as adminis-tratrix of her late husband’s estate and individually, and by Jennifer Ann Rogers, by and through her mother and next friend, Charlene Rogers (collectively “Appellants”), against architects Barlow Eddy Jenkins, P.A. (“Barlow Eddy”) and Hugh Blair (“Blair”).[1] The circuit court granted summary judgment in favor of Barlow Eddy upon determining that no genuine issue of material fact existed. The Appellants timely filed this appeal, asserting that the circuit court’s ruling was in error, and that there is a genuine issue of material fact regarding whether or not the architects’ negligence contributed to the cause of Rogers’s death. Finding no error, we affirm.
FACTS
¶ 2. In 1996, Barlow Eddy was awarded a contract by the Hinds County Board of *1221 Supervisors to act as the design professional for the Youth Detention Center Construction Project, and Blair was named as the project representative. Hinds County also chose Major/Yates Joint Venture (“Major/Yates”) to be the general contractor for the project. In May 1999, Major/Yates entered into a subcontract with Independent Roofing, where Rogers was employed as a supervisor, to install the Center’s roof.
¶ 3. The Center opened on January 2, 2001, and the following day, it reported a possible leak in the roof. Independent Roofing sent five or six people to the Center for an inspection. The workers accessed the roof by using an interior steel wall-mounted ladder in the Center’s mechanical room that had been fabricated by Ellis Steel and erected by MajorYates. As Rogers was climbing the ladder, he fell. He was transported to the University of Mississippi Medical Center (“UMMC”), where he remained until he died on January 13, 2001.
¶ 4. The only eyewitness to the accident was Elbert Martin, the Center’s maintenance supervisor, who climbed the ladder immediately before Rogers. Martin said that he saw Rogers’s head appear at the roof hatch, but then it disappeared. Realizing that Rogers was about to fall off of the ladder, Martin tried to reach down and grab him, but he was unable to prevent Rogers from falling. Martin did not know what caused the incident.
¶ 5. Following the accident, the Occupational Safety and Health Administration (“OSHA”) performed an inspection at the site and found that the ladder from which Rogers had fallen did not meet OSHA’s specified dimensions. The Appellants point out that Barlow Eddy had been contracted to draw the plans for the Center and that Barlow Eddy was responsible for the design, construction, and placement of the wall-mounted ladder. The Appellants argue that OSHA’s regulations should have placed Barlow Eddy on notice that the ladder was defective and dangerous due to the way it had been installed, designed, and constructed. They claim that the dimensional defects of the ladder and the placement of the ladder near the back wall caused Rogers’s injuries and ultimate death. They presented two expert witnesses who testified during depositions that the design and construction of the ladder made it difficult to climb and did not meet OSHA’s standards in that: (1) the width of the ladder — the spacing between the vertical bars — was too narrow, and (2) there was not enough space between the ladder and the wall to which it was secured.
¶ 6. The Appellants originally filed this action for personal injuries and wrongful death against Barlow Eddy, Blair, Ma-jorYates, and Ellis Steel. They also filed suit against UMMC for wrongful death in a separate action, which was later consolidated with this suit. All of the abovemen-tioned defendants except for Barlow Eddy and Blair settled and were dismissed.
¶ 7. Barlow Eddy filed two motions with the circuit court: (1) a motion for summary judgment (a) to dismiss the wrongful-death allegations inasmuch as there was also pending a wrongful-death claim against UMMC (election of remedies defense) and (b) to dismiss the claim of negligence for insufficient proof of causation and (2) a motion in limine to prevent the Appellants’ experts from testifying that the failure to follow OSHA’s guidelines amounted to negligence. Barlow Eddy withdrew part of the motion after the Appellants settled their wrongful-death claim against UMMC and dismissed the case against UMMC.
¶ 8. The Appellants offered the expert testimonies of an architect, Neil Hall, Ph. *1222 D., and a mechanical engineer, Jeffrey R. Shenefelt, Ph.D., in an effort to establish causation. The circuit court, however, found the expert witnesses’ testimonies to be insufficient and found, as a matter of fact and law, that there was no genuine issue of material fact to demonstrate that Barlow Eddy was negligent or that their alleged negligence was a proximate cause or a proximate contributing cause of Rogers’s accident, injuries, and/or death. As a result, the circuit court held that Barlow Eddy was entitled to summary judgment, and the complaint against Barlow Eddy and Blair was dismissed with prejudice.
STANDARD OF REVIEW
¶ 9. In order to determine if the circuit court properly granted a motion for summary judgment, this Court conducts a de novo review of the record. Bailey v. Wheatley Estates Corp., 829 So.2d 1278, 1282(¶ 16) (Miss.Ct.App.2002). Pursuant to Rule 56(c) of the Mississippi Rules of Civil Procedure, summary judgment is properly granted when “there is no genuine issue as to any material fact and ... the moving party is entitled to summary judgment as a matter of law.” The moving party bears the burden of proving that no genuine issue of material fact exists, and the evidence is reviewed in the light most favorable to the nonmoving party. Johnson v. Johnson, 822 So.2d 1067, 1069(116) (Miss.Ct.App.2002). The circuit court is not permitted to try the issues; the court “may only determine whether there are issues to be tried.” Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 795 (Miss.1995) (citation omitted). Unless the court finds beyond a reasonable doubt that the plaintiff would not be able to prove any genuine issue of material fact to support his or her claim, a motion for summary judgment should be denied. Id.
ANALYSIS
¶ 10. The Appellants assert that the circuit court erred in granting Barlow Eddy’s motion for summary judgment because it placed a higher burden on the Appellants than should have been required. Barlow Eddy, on the other hand, contends that the Appellants failed to create a genuine issue of material fact as to causation.
¶ 11. A claim of negligence requires the plaintiff to “prove by a preponderance of the evidence (1) duty, (2) breach of duty, (3) causation, and (4) injury.” Patterson v. Liberty Assocs., L.P., 910 So.2d 1014, 1019(¶ 14) (Miss.2004). “In order to survive a motion for summary judgment in a negligence action[,] the plaintiff must put on evidence showing that the defendant breached a duty of care and that [the] breach proximately caused his injury.” Palmer, 656 So.2d at 797.
¶ 12. In Accu-Fab & Construction, Inc. v. Ladner, 778 So.2d 766, 771(¶ 21) (Miss.2001) (overruled on other grounds), the supreme court held that it was not an abuse of the trial court’s discretion to admit evidence of OSHA’s regulations for a limited purpose “to be used as a measure of reasonable care consistent with industry standards” and not to show negligence. Thus, OSHA’s regulations are not always admissible. Instead, the decision of whether to admit or exclude evidence of OSHA’s regulations lies within the discretion of the trial judge.
¶ 13. The trial court found the following:
Thus, the mere fact that the ladder was not constructed in accordance with the contract specifications or with OSHA regulations, is not sufficient to show negligence which resulted in injury to [Rogers]. But even if the Court were to *1223 allow testimony about OSHA guidelines, the Plaintiffs still cannot meet their burden of proof on causation because [the] Plaintiffs fail to present any witnesses who can testify as to how and why Rogers fell or that had the ladder met OSHA guidelines Rogers would not have fallen. Stated another way, no proof exists to establish a reasonable inference that any negligence on the part of Defendants proximately contributed to the Plaintiffs’ damages.... [The] Plaintiffs in this case present only conjecture and possibility as to the cause of Rogers’[s] fall. Such speculation “is never sufficient to sustain a verdict in a tort action” because a mere scintilla of negligence cannot create a jury issue.
¶ 14. The Appellants’ evidence of causation was based on the expert-witness testimony of Dr. Hall and Dr. Shenefelt. The Appellants argued that the experts’ testimonies established that the design and installation of the ladder caused or contributed to decedent’s injuries and death. Upon our review of the testimonies of Dr. Hall and Dr. Shenefelt, we find that their opinions are a mere guess, speculation, or conjecture on their part. Such testimony is insufficient to create a genuine issue of material fact.
¶ 15. Dr. Hall testified that the condition of the ladder more likely than not was a cause of Rogers’s fall. However, he also testified as follows:
Question: You are not an accident re-constructionist, are you?
Answer: No.
Question: Have you made any investigation and do you have an opinion as to what caused Mr. Rogers to fall from the ladder.
Answer: Yes, I have an opinion. Based on my experience in the field of construction and based on the fact that OSHA has determined what is a safe and unsafe ladder, I think more likely than not the fall occurred as a result of a problem with the defective construction of the ladder.
Question: What do you base that on? What investigation have you done to make that determination?
Answer: Again, I am not an accident reconstructionist, but it’s based on my — we design things to standards because the safety experts have determined ergonomically statistically for whatever reason that we have to follow certain standard design and thresholds to preclude accidents from recurring. There’s a greater likelihood of the accident occurring if it’s built defective than if it’s not built defective. Am I able to rule out other conditions, personal health, other things that might have been involved in the accident, no, I’m not an accident reconstruetionist.
Question: Had the ladder been constructed, you’re not able to say as you say 16 inches and five inches, that Mr. Rogers wouldn’t have fallen anyway?
Answer: I cannot say yes or no.
Question: Let me state it another way then, are you prepared to say that if the ladder had been constructed according to OSHA guidelines that Mr. Rogers would not have fallen?
Answer: Again, with total surety, I cannot say yes or no.
[[Image here]]
Question: Do you know what caused Mr. Rogers to fall?
Answer: No.
¶ 16. Dr. Hall’s testimony does not prove that the defective design or installation of the ladder caused Rogers’s fall and damages. Dr. Hall’s opinion is based on the ladder’s dimensions. Dr. Hall testified *1224 that even though his conclusions are based on OSHA’s guidelines, he cannot say that had the ladder met OSHA’s guidelines, Rogers would not have fallen. Dr. Hall also testified that there were other conditions which could have caused Rogers to fall, such as Roger’s personal health “or other things,” and that he simply could not say what was the proximate cause of Rogers’s fall. Dr. Hall admitted that he did not know what caused Rogers’s fall. Dr. Hall’s testimony discussed the architects’ construction responsibility, but his testimony does not establish causation.
¶ 17. Dr. Shenefelt is a mechanical engineer. His investigation of the accident was limited to his discussions with the Appellants’ attorney. He made no independent investigation into the cause of the fall. Dr. Shenefelt testified as follows:
Question: What opinions do you intend to render in this case?
Answer: That the ladder as placed on the building did not meet OSHA regulations and, therefore, caused a hazard.
Question: In your opinion can you discount the fact that Mr. Rogers fell for reasons other than slipping?
Answer: He could have had a stroke, I don’t know.
Question: So there are other things that could have happened that caused him to fall other than just merely slipping off the ladder-off the rung of the ladder?
Answer: Well sure, he could have let go. I don’t think that’s natural, but it’s possible.
[[Image here]]
Question: Now your opinion that Mr. Rogers fell because the ladder did not meet OSHA specifications, do you intend to express an opinion that if the ladder had met OSHA specifications he would not have fallen?
Answer: I would say that if the ladder had met specifications it would have contributed less to his fall.
Question: But you can’t state that had the ladder met OSHA specifications that he wouldn’t have fallen?
Answer: No, I can’t say that, no.
¶ 18. Dr. Shenefelt made no effort to determine what Rogers was doing at the time he fell. He did not know how many times Rogers or others had used the ladder without incident. Dr. Shenefelt was of the opinion that the mere fact that the ladder did not meet OSHA’s mandated dimensions and the fact that Rogers was on the ladder at the time he fell were sufficient to show a cause and effect. However, we find that Dr. Shenefelt’s testimony does not establish causation.
¶ 19. Clearly, OSHA’s regulations are not admissible to prove negligence. Crane Co. v. Kitzinger, 860 So.2d 1196, 1199-1200(¶ 12) (Miss.2003). Likewise, OSHA’s regulations, even if admissible, are insufficient to prove causation. At best, Dr. Shenefelt’s testimony — that if the ladder had met OSHA’s specifications that the ladder would have contributed “less” to his fall — is insufficient to establish causation.
¶ 20. No one knows if Rogers slipped, missed a step, became dizzy, or simply fell for some other unknown reason totally unrelated to the dimensions of the ladder. Rogers’s presence on the ladder at the time of his fall was not enough to say the ladder was the proximate cause of his fall when there was no evidence presented as to why Rogers fell. The trial court’s basis for granting summary judgment was that the Appellants failed to show causation, and the Appellants’ experts do nothing to advance their theory of causation.
*1225 ¶ 21. Summary judgment may not be defeated through expert opinions that are not based on facts but instead are based on a guess, speculation, or conjecture. In Davis v. Christian Brotherhood Homes of Jackson, Mississippi, Inc., 957 So.2d 390, 409(¶ 46) (Miss.Ct.App.2007), Judge Barnes, writing for the Court, concluded that:
According to our supreme court in Mississippi Transportation Commission v. McLemore, 863 So.2d 31 (Miss.2003), “the facts upon which the expert bases his opinion or conclusion must permit reasonably accurate conclusions as distinguished from mere guess or conjecture.” Id. at 36 (¶ 8) (quoting Hickox v. Holleman, 502 So.2d 626, 638 (Miss.1987)). Accordingly, the proponent of the expert’s testimony must demonstrate that such testimony is not based “merely [on] his subjective beliefs or unsupported speculation.” Id. at (¶ 11) citing Daubert [v. Merrell Dow Pharmaceuticals, Inc.], 509 U.S. [579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)]. Furthermore, “neither Daubert nor the Federal Rules of Evidence requires that a court ‘admit opinion evidence that is connected to existing data only by the ipse dixit of the expert,’ as self-proclaimed accuracy by an expert is an insufficient measure of reliability.” Id. at 37(¶ 13) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 157, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).
¶ 22. The plaintiffs in Davis brought a premises-liability claim. Id. at 394(¶ 1). In response to a motion for summary judgment, the plaintiffs presented the affidavit of Commander Tyrone Lewis of the Jackson Police Department. Id. at 408(¶43). Commander Lewis was designated as an expert in the field of security and law enforcement. Id. In his affidavit, Commander Lewis testified that the cause of Lucius Davis’s death was the defendant’s failure to have security guards or other security measures. Id. Commander Lewis testified that the security guards would have stopped Troy Younger from loitering and starting a fight with Lucius in the parking lot, which preceded Lucius’s death. Id. Commander Lewis further stated that, on the issue of inadequate lighting, it was well known in his field of expertise “that inadequate lighting increases the chances of criminal activity” and the inadequate lighting at the complex on February 4, 2003, contributed to the death of Lucius. Id.
¶ 23. The trial court granted Christian Brotherhood’s motion for summary judgment. The court concluded that Commander Lewis’s affidavit was “nothing more than just a compilation of conclusory statements and provides no factual basis.” Id. This Court affirmed the summary judgment and held that an expert’s opinion must be supported by appropriate validation, i.e., good grounds based on what is known and that the trial judge did not abuse his discretion as the gatekeeper in ruling that the opinions contained in Commander Lewis’s affidavit were merely con-clusory statements and had no factual basis. The Court also held that “[a]lthough Davis correctly points out that the issue of proximate cause is generally an issue for a jury to decide, this fact does not change the requirement that, to withstand a motion for summary judgment, the non-moving party must present evidence that would allow a jury to find that the breach proximately caused the injury at issue.” Id. at 410(¶ 48).
¶24. The Appellants here have the same problem. Without the expert witnesses’ conclusory statements and speculation, there is no way to make the leap from the failure to meet OSHA’s ladder dimensions to the proximate cause of Rogers’s *1226 fall. Just as the Court in Davis found it appropriate for the trial court to disregard the expert opinion of Commander Lewis that inadequate lighting increased the chances of criminal activity, it is likewise appropriate for trial court here to disregard the testimonies of the Appellants’ experts that failure to comply with OSHA’s guidelines increased the likelihood that the ladder’s dimensions were the proximate cause of the fall. The experts made no attempt to investigate the cause of the fall. They simply looked at the ladder dimensions and assumed that the dimensions must have been the cause. An expert’s opinion must be based on more than speculation and conjecture.
¶ 25. We then turn to the other evidence available. Martin was an eyewitness to the accident. Martin described the accident as follows:
Well, we went into the mechanical room. I think mostly all of the roofing people pretty much gained access to the ladder and they went on up on top of the building from the inside up on top of the building to the roof. And Yates Construction people, they went also. And I was the last one before Mr. Rogers went up to go up to the roof, you know, to get access to go up on top of the building. So when I went up I was kind of walking away from the opening and just something said, you know, you need to kind of wait and make sure Mr. Rogers gets up.
So I kind of backed up a little and I waited for Mr. Rogers to gain access to the ladder and come up. And the time that I thought that he should have been up, I had not seen his head, you know, clear the opening, so I just kind of backed up a little further. I went to kind of peak over to see if I could see, you know, how far along the line was he, and I saw him coming up so I kind of backed off a little. And he came up a little. When his head cleared the opening of the access door and the roof, he stopped. He didn’t come all the way out. It was just his head had cleared the opening, you know, just his head only. He stopped and then he kind of just paused for a moment and I was trying to figure out, you Imow, is he going to come on up and finish the climb or what’s going on. So he just stopped, hesitated, and then he started backing up and going back down the ladder. At that point I was confused. He was not talking. Verbally he didn’t say anything. He just started going back down the ladder.
So I come over a little further to see what was going on. Like I say, he was a huge guy. So when I looked down, I really couldn’t see much, just no more than his head. I was only a few feets [sic] away from, you know, the opening and I don’t know what was going on, but he still was — I couldn’t figure out what was going on, you know. I know he had backed back up and his head had went back down from the top. So his head was no longer visible right there. You know, I had to kind of look down to see him. At that moment, you know, I don’t know what was going on. I looked down and I was just kind of staring to see what was going on. I really couldn’t figure out was he going down or was he coming up or what’s going on. He’s not talking and not saying nothing [sic].
So by the time I realized that something was going on, just instinctively, you know, I lunged myself forward because he was falling or something like that. I lunged up forward and I grabbed his jacket just kind of like this with both hands. (Demonstrates) I said, I’m a pretty big guy and I take a lot of pride in being in shape. I used to do a lot of pushups. So I thought I was pretty *1227 strong, but, you know, I really wasn’t thinking about what I was doing. But I thought he was in trouble. When I grabbed the jacket, he continued to fall. And from my view I couldn’t really see the fall, but, you know, when I got down the ladder, he was lying on the floor on his back.
¶ 26. Martin testified that he could not tell what caused Rogers’s fall and that Rogers gave no indication prior to his fall of what was happening. Martin could not tell if Rogers slipped or if the condition of the ladder played a role at all in Rogers’s fall. There was no evidence that Rogers slipped. According to Martin, six people had gone up that same ladder prior to Rogers that day. Martin testified that prior to the date of the accident, he and his two employees went up the ladder between twenty-five to fifty times each with no incident.
¶ 27. The Appellants did not present sufficient evidence to provide that the actions of Barlow Eddy were the proximate cause or the proximate contributing cause of Rogers’s injuries. The trial court correctly held that the Appellants would have had to prove that Barlow Eddy’s negligence caused Rogers’s death. The trial court also correctly concluded that the Appellants had failed to present any witnesses who could testify as to how and why Rogers fell; likewise, the court found that the Appellants had failed to present any evidence that if the ladder had met OSHA’s guidelines, Rogers would not have fallen.
¶ 28. The trial court also correctly concluded that the opinions of Dr. Hall and Dr. Shenefelt were a mere guess, speculation, or conjecture as to the element of proximate cause. The testimonies of Dr. Hall and Dr. Shenefelt were sufficient to establish a duty. However, their testimonies did not prove causation. Neither Dr. Hall nor Dr. Shenefelt testified why or how Rogers fell. Neither testified that any action or inaction of Barlow Eddy was the proximate cause of Rogers’s fall. Instead, both witnesses opined that since the ladder in question did not meet OSHA’s standards, then it must have contributed to Rogers’s fall. Dr. Hall specifically stated that he did not know what caused Rogers to fall. Dr. Shenefelt’s opinion was premised solely on the fact that “the ladder as placed on the building did not meet OSHA’s regulations and, therefore, caused a hazard.” He acknowledged there could be other unknown reasons for the fall. Finally, he testified that he could not say that if the ladder had met OSHA’s specifications Rogers would not have fallen.
¶ 29. The Appellants’ failure to prove causation required that summary judgment be granted. Accordingly, the trial court’s grant of summary judgment is affirmed.
¶ 30. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
IRVING, BARNES, ROBERTS AND CARLTON, JJ„ CONCUR. ISHEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., LEE AND MYERS, P.JJ., AND MAXWELL, J.

. The Appellees will be collectively referred to as "Barlow Eddy” unless, for the sake of clarity, the distinction is relevant.