# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00069-COA

CAROL GRAY                                                        APPELLANT

v.

ERIC GRAHAM, M.D. AND MICHELLE                               APPELLEES
GRAHAM, N.P.

| | |
|---|---|
| DATE OF JUDGMENT: | 12/18/2013 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JONATHAN B. FAIRBANK |
| | JOHN F. HAWKINS |
| | EDWARD GIBSON |
| ATTORNEYS FOR APPELLEES: | STEPHEN PERESICH |
| | JOHANNA M. MCMULLAN |
| | MARY VAN SLYKE |
| | LAUREN R. MCCRORY |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| TRIAL COURT DISPOSITION: | GRANTED SUMMARY JUDGMENT IN FAVOR OF APPELLEES |
| DISPOSITION: | REVERSED AND REMANDED - 02/02/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., ISHEE AND WILSON, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     In 2011, Carol Gray filed a medical-malpractice suit against Eric Graham and Michelle Graham, among others, in the Harrison County Circuit Court. Gray asserted that the Grahams negligently failed to communicate the outcome of the biopsy they had performed on her, which concluded that Gray had multiple myeloma. The Grahams did not inform Gray that she had multiple myeloma until approximately one year after they had

received the biopsy results. Gray argued that this delay in treatment diminished the quality of her remaining life expectancy and the chance of improvement of her condition. The Grahams soon filed a motion for summary judgment arguing that Gray failed to establish causation through an expert opinion. After a hearing, the circuit court determined that the supporting affidavit provided by Gray's medical expert regarding causation was conclusory. Based on this finding, the circuit court granted the Grahams' motion for summary judgment. Aggrieved, Gray appeals. Finding error, we reverse and remand the circuit court's judgment.

## STATEMENT OF FACTS

¶2. On May 13, 2009, Gray presented to the Grahams to repair a thoracic fracture. During the procedure, the Grahams performed a bone biopsy that concluded she suffered from multiple myeloma. The results were sent to the Grahams' medical facility on May 14, 2009, but the information was not relayed to Gray despite follow-up visits with the Grahams following her procedure.

¶3. Between May 2009 and July 2010, Gray suffered five additional spinal fractures and bony lesions as a result of the multiple myeloma. Not knowing the cause of the fractures, Gray sought treatment from another medical provider, Dr. Sean Kirby. Dr. Kirby informed Gray on June 7, 2010, that the May 2009 biopsy results indicated a diagnosis of multiple myeloma. On June 29, 2010, Gray was evaluated at M.D. Anderson Cancer Center, where the diagnosis of multiple myeloma was confirmed. She was admitted to M.D. Anderson and began treatment immediately thereafter.

¶4. She was found to have suffered five additional spinal fractures between May 2009 and

July 2010, as well as bony lesions on her hip and skull as a result of the multiple myeloma's progression. After receiving treatment at M.D. Anderson, Gray asserts that she is in partial remission and has not suffered from any further spinal fractures. It is notable that while many of the M.D. Anderson findings are summarized in the pleadings and medical expert affidavits, the M.D. Anderson records were not placed in the record before the circuit court.

¶5. Regardless, in 2010, Gray served the Grahams with a presuit notice regarding their lack of communication of the May 2009 biopsy results. It was not until the Grahams received this notice that they claim they became aware of the biopsy results. In Gray's pleadings, she asserted that the Grahams' failure to advise her of the biopsy results unduly delayed treatment of her condition for approximately a year and diminished the quality of her remaining life.

¶6. In support of her claim, Gray offered expert affidavits from Dr. Bruce Avery, an oncologist, Dr. Dennis Bozarth, an orthopedic surgeon, and Eulanda Armstrong, a nurse. The circuit court stated that the affidavits of Dr. Bozarth and Armstrong only indicated that the Grahams violated the applicable standard of care. However, the circuit court asserted that the affidavits did not address the causation issue. However, Dr. Avery's affidavit did directly address the causation issue. Hence, the circuit court took particular interest in Dr. Avery's affidavit.

¶7. After studying Gray's medical records, Dr. Avery noted that Gray had responded well to the treatment she was administered at M.D. Anderson. He pointed out that Gray sustained her first two spinal fractures and lesions during a three-month period in early 2009. The

3

Grahams repaired one of those fractures during the May 2009 procedure. Five additional fractures and two bony lesions occurred during the following year. Dr. Avery opined that because Gray responded well to treatment and did not suffer any further fractures following her treatment, the delay in receiving treatment for her condition caused or substantially contributed to the spinal fractures she suffered from the time of her procedure with the Grahams until her diagnosis and treatment at M.D. Anderson.

¶8.     Nonetheless, the circuit court determined that Dr. Avery's opinions regarding causation were conclusory in nature and could not withstand summary judgment. Hence, the circuit court granted summary judgment in favor of the Grahams. Gray now appeals and challenges the circuit court's ruling.

## DISCUSSION

¶9.     The Mississippi Supreme Court has held that an appellate court "reviews a trial court's grant or denial of a motion for summary judgment or a motion to dismiss under a de novo standard." *Copiah Cty. v. Oliver*, 51 So. 3d 205, 207 (¶7) (Miss. 2011) (citation omitted). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 794 (Miss. 1995) (citing M.R.C.P. 56(c)) (citation omitted). "[I]n a medical malpractice action, negligence cannot be established without medical testimony that the defendant failed to use ordinary skill and care." *Palmer v. Biloxi Reg'l Med. Ctr. Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990) (citation

4

omitted). "An expert is necessitated to identify the action or inaction which allegedly constituted a breach of duty and which proximately caused the patient's injury." *Id*. (citation omitted).

¶10. Here, the affidavits presented to the circuit court adequately support Gray's theory that the Grahams violated the applicable standard of care by failing to inform Gray of her diagnosis until a year after the results were received. The question becomes whether the circuit court erred in determining that Dr. Avery's affidavit was conclusory and failed to properly establish causation such that summary judgment was appropriate. Dr. Avery's affidavit states, in pertinent part:

> Based upon the manner in which Mrs. Gray responded to treatment at M.D. Anderson, I opine to a reasonable degree of medical certainty that had Mrs. Gray been timely informed of the May 13, 2009 biopsy results, and intitiated treatment for multiple myeloma shortly thereafter, most[,] if not all[,] of the fractures and bony lesions[,] which were discovered during June and July of 2010, more likely than not could have been avoided. MRI studies conducted during 2008 and 2009[] did not indicate any spinal fractures other than at T-5 and T-7. Nor were any lytic lesions noted. To a reasonable degree of medical certainty I opine that Mrs. Gray's multiple myeloma was left untreated for over a year, allowed to progress, and produce[d] the additional spinal fractures . . . . Earlier treatment of Mrs. Gray's multiple myeloma, although not curative, more likely than not would have prevented additional fractures. It is my opinion that treatment within the standard of care, to a reasonable degree of medical certainty, would have resulted in a substantially better outcome for Mrs. Gray.

¶11. The circuit court cited *Hubbard v. Wansley*, 954 So. 2d 951, 964 (Miss. 2007), as support for its determination that Dr. Avery's affidavit was conclusory and, thus, without the strength necessary to defeat summary judgment. In *Hubbard*, Ruby Hubbard sued Dr. Billy Wansley for medical malpractice after she fell and hit her head while under his supervision

5

at a hospital. *Id*. at 954 (¶3). After the fall, Dr. Wansley ordered nurses to monitor Hubbard, and she was discharged later that day. *Id*. at 954-55 (¶2). After Hubbard returned to the hospital that night due to neurological issues, she was readmitted to the hospital and Dr. Wansley examined her. *Id*. at 955 (¶3). Dr. Wansley then referred Hubbard to a neurologist, who ultimately recomended Hubbard undergo surgery to repair the damage done during her fall. *Id.* at (¶4).

¶12. Dr. Lynn Stringer served as one of Hubbard's medical experts and provided deposition testimony and two affidavits in support of Hubbard's claim that her then-current medical condition would have been improved if Dr. Wansley had referred her to a neurologist sooner. *Id*. at 964 (¶45). During a deposition, Dr. Stringer specifically addressed the issue of causation. *Id*. at 965 (¶46). Dr. Stringer was asked whether he could say with reasonable medical probability whether Hubbard's neurological condition would have improved more had Dr. Wansley referred her to a neurologist sooner. *Id.* Dr. Stringer responded: "[B]y not being given an opportunity [to be treated by a neurologist sooner], I guess we'll never know." *Id*.

¶13. However, after the deposition, Dr. Stringer issued an affidavit that differed greatly on this issue. *Id*. at (¶47). Therein, he stated: "It is my opinion that had Ruby Hubbard been treated properly by Dr. Wansley, or if Dr. Wansley had [not breached the standard of care], it is my opinion that Ruby Hubbard would have had a greater than fifty percent chance of reduced neurological injury." *Id.* Dr. Stringer offered no medical facts or authority to support his contention or his reasons for changing his opinion so drastically from his earlier

6

deposition. The supreme court stated:

> The language of Dr. Stringer's affidavit is almost wholly conclusory on the issue of causation and gives very little in the way of specific facts and medical analysis to substantiate the claim that Hubbard had a greater than fifty percent chance of substantial recovery if she had received the optimal care of which Dr. Stringer spoke. This Court has shown its disapproval of such affidavits in the past. In addition to the language of the affidavit being conclusory, it . . . seems to be an attempt to cure Dr. Stringer's contradictory deposition testimony.

*Id.* at 965-66 (¶48). Accordingly, the supreme court upheld the circuit court's grant of summary judgment. *Id.* at 966 (¶50).

¶14. *Hubbard* is distinguishable from the instant case for numerous reasons. First, there is no effort to cure prior deposition testimony. There was no prior testimony from Dr. Avery that contradicted his affidavit opinions. Second, Dr. Avery provided specific reference to medical facts in support of his opinion. Dr. Avery swore that he had reviewed all of Gray's medical records from all pertinent times and medical providers. He chronicled the occurrence of Gray's spinal fractures, noting when she began treatment at M.D. Anderson. He then pointed out that the fractures increased during the year prior to her diagnosis but ceased after she was diagnosed and began treatment at M.D. Anderson. Finally, he averred within a reasonable degree of medical certainty that if Gray had been advised of her diagnosis in May 2009, when the Grahams were sent the results, and she had begun the appropriate treatment, she would not have suffered the spinal fractures she incurred the following year. In sum, Dr. Avery argued that because Gray achieved success with treatment in 2010, she would have had success with treatment in 2009, thereby preventing the additional five spinal fractures she suffered between the time the Grahams received the

7

biopsy results and the time Gray was informed of her diagnosis and began treatment.

¶15.    We appreciate Dr. Avery's line of reasoning given the factual support he borrows to support his theory, and we disagree with the circuit court's determination that Dr. Avery's opinions were conclusory.  Rather, we determine that Dr. Avery's affidavit constituted sufficient evidence to establish causation at this point in the litigation.  Given the information before us, we find that there remains an issue of material fact.  Hence, we reverse and remand the circuit court's grant of summary judgment.

¶16.    **THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.**

**LEE, C.J., IRVING, P.J., BARNES, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR.  GRIFFIS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  GREENLEE, J., NOT PARTICIPATING.**