# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01121-COA

**DEBRA DARLENE BURNS AND WILLIAM DALE BURNS**  APPELLANTS

**v.**

**MATTHEW GRAY AND JODY GRAY**  APPELLEES

DATE OF JUDGMENT: 07/19/2017
TRIAL JUDGE: HON. LESTER F. WILLIAMSON JR.
COURT FROM WHICH APPEALED: LAUDERDALE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS: FRANK H. SHAW JR.
F. GREGORY MALTA
ATTORNEYS FOR APPELLEES: EDWARD C. TAYLOR
NANCY SIPLES BRUMBELOE
NATURE OF THE CASE: CIVIL - PERSONAL INJURY
DISPOSITION: AFFIRMED: 10/09/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., FAIR AND TINDELL, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    Debra Darlene Burns and her husband William Dale Burns filed a complaint against their landlords, Matthew and Jody Gray, and alleged injuries related to a fall they claim was "as a result of the irregular pattern of the basement stairs." The circuit court found the Burnses' expert witness's testimony and opinions regarding causation were based on speculation and, therefore, struck his testimony and entered summary judgment in favor of the Grays. The Burnses timely appealed. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    From July 2008 to February 2015, the Burnses lived in a rental house owned by the

Grays. Prior to renting the house, the Burnses inspected the house with the Grays' rental agent. Shortly after they moved in, the Burnses advised the Grays of their concerns about the basement stairs, including the steepness of the stairs.

¶3. On January 21, 2012, Mrs. Burns fell while walking down the stairs from the first floor of the residence to the basement. On January 15, 2015, the Burnses filed a complaint, alleging breach of contract, premises liability, and negligence per se. The Burnses claimed the Grays were negligent in "fail[ing] to use reasonable care in the design, structure, and maintenance of the steps and railing leading to the basement of the residence on their premises, causing Mrs. Burns to fall and thereby sustain severe bodily injury." The Burnses contend that Mrs. Burns incurred physical injuries and that Mr. Burns incurred a loss of consortium and services as a result of the fall.

¶4. Neither Mr. or Mrs. Burns have personal knowledge of how or why Mrs. Burns fell. Mrs. Burns has no memory of the day of the incident, and Mr. Burns was not at home when Mrs. Burns fell. The only person who was with Mrs. Burns at the time of her fall was her nephew, Michael Faulkner.

¶5. Faulkner, who was thirteen or fourteen years old at the time of the fall, testified that he saw Mrs. Burns begin to walk down the basement stairs from the first floor. According to Faulkner, Mrs. Burns "started down the stairs" and "made it to about the third step . . . and . . . pretty much face plant[ed] down the rest of the stairs." Faulkner was behind Mrs. Burns at the top of the stairs and did not see her feet when she fell. Faulkner explained that at the time of her fall, Mrs. Burns was carrying cigarettes and possibly a cup in one hand. Faulkner

2

"think[s] [Mrs. Burns] tried to" grab the handrail, but he did not see her touch it. Faulkner testified that he did not know why Mrs. Burns fell but "assume[d] she lost her footing or something."

¶6.     The Burnses' expert witness, Daniel Jason Ramsey, conducted a safety analysis related to the injuries sustained by Mrs. Burns. As part of his analysis, Ramsey inspected and took measurements of the stairway and reviewed applicable building codes. He further interviewed Faulkner and obtained information from the Burnses' attorney.

¶7.     On August 31, 2016, Ramsey submitted an affidavit wherein he explained that as a result of his investigation, he "determined that the pitch of the subject stairway was constructed at an angle of 47.11 degrees, classifying it as a 'steep stair type.'" Ramsey found "that the construction did not comply with the standards set out in the governing building code." Ramsey further found "that the handrails installed as a component of the stairway failed to comply with applicable industry standards, in that they were constructed flush against the adjoining walls, offering no graspable surface and permitting the user no handhold."

¶8.     Ramsey opined that "[b]ased upon [his] interview of . . . Faulkner, who observed Mrs. Burns start to descend the stairs, then stumble and fall, . . . the steep pitch of the stairway and the narrow width of the steps were the proximate cause of or a substantial contributing factor causing the accident, making Mrs. Burns overbalance and fall forward." He further opined that "the absence of a proper handrail" was also a substantial contributing factor causing the accident."

¶9. Ramsey was subsequently deposed.[1] During his deposition, Ramsey testified that he "d[id]n't really know why [Mrs. Burns] fell exactly and at what step, but she lost her balance and she fell." When asked what evidence he had that the stairs caused Mrs. Burns to fall, Ramsey explained that the stairs were "out of compliance." Ramsey acknowledged he could not rule out other causes.

¶10. The Grays filed a motion for summary judgment and a motion to strike Ramsey's testimony. Following a hearing, the circuit court granted both motions. Specifically, the circuit court stated:

> the opinions of Mr. Ramsey are mere speculation as to the element of proximate cause and do not prove causation. Mr. Ramsey did not testify that any action or inaction of [the Grays] was the proximate cause of Mrs. Burns['s] fall; instead, Mr. Ramsey opined that the fact that the stairs were steep and narrow means they must have caused or contributed to Mrs. Burns['s] fall. However, Mr. Ramsey specifically stated that he did not know what caused Mrs. Burns to fall and acknowledged that he could not rule out all other variables. This testimony is insufficient to show causation.

¶11. The circuit court concluded that "[t]here [wa]s simply not enough competent evidence that would allow a determination of the cause of Mrs. Burns'[s] fall. As a result, the circuit court found that "summary judgment must be entered as a matter of law since [the Burnses] cannot establish the proximate cause of Mrs. Burns'[s] fall."

¶12. The Burnses now appeal and argue the circuit court erred in granting summary judgment and striking their expert witness.

## ANALYSIS

*I. Whether the circuit court erred in granting summary judgment.*

---

[1] Ramsey's deposition testimony is discussed in more detail in our analysis.

¶13. The Burnses first argue the circuit court erred in granting the Grays' motion for summary judgment. "This Court reviews a [circuit] court's grant or denial of a motion for summary judgment de novo." *Amfed Nat'l Ins. Co. v. NTC Transp. Inc.*, 196 So. 3d 947, 953 (¶18) (Miss. 2016). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation mark omitted). "This Court must view the evidence in the light most favorable to the party against whom the motion has been made." *Id.* (internal quotation mark omitted). However, "the party opposing summary judgment may not rest upon mere allegations or denials of his pleadings, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 953-54 (internal quotation mark omitted). "The non-moving party's claim must be supported by more than a mere scintilla of colorable evidence; it must be evidence upon which a fair-minded jury could return a favorable verdict." *Van v. Grand Casinos of Miss. Inc.*, 767 So. 2d 1014, 1018 (¶7) (Miss. 2000).

¶14. "A claim of negligence requires the plaintiff to prove by a preponderance of the evidence (1) duty, (2) breach of duty, (3) causation, and (4) injury." *Rogers v. Barlow Eddy Jenkins P.A.*, 22 So. 3d 1219, 1222 (¶11) (Miss. Ct. App. 2009) (internal quotation mark omitted). "In order to survive a motion for summary judgment in a negligence action, the plaintiff must put on evidence showing that the defendant breached a duty of care and that the breach proximately caused h[er] injury." *Id.* "Proximate cause requires: (1) cause in fact;

5

and (2) foreseeablity." *Ogburn v. City of Wiggins*, 919 So. 2d 85, 91 (¶21) (Miss. Ct. App. 2005). "Cause in fact means that the act or omission was a substantial factor in bringing about the injury, and without it the harm would not have occurred." *Id.* (internal quotation mark omitted).

¶15.     The Burnses claim they "affirmatively established that the proximate cause of Mrs. Burns's injuries was the dangerous stairway and defective railing." In support of their claim, the Burnses rely on the testimony and opinions of Faulkner and Ramsey.  However, the record shows neither Faulkner nor Ramsey know what caused Mrs. Burns to fall.

¶16.     Although Faulkner "assume[d] she lost her footing," he admitted he did not see Mrs. Burns's feet at the time of the fall and does not know why she fell.[2]  The Burnses assert "Faulkner's eyewitness testimony and sworn affidavit were presented to the [circuit] court in which he swore that Mrs. Burns lost her footing and tumbled down the stairs because of the 'steep, narrow construction of the stairs.'"  However, the affidavit upon which the Burnses rely was executed by Faulkner five months after Faulkner testified that he did not know why Mrs. Burns fell. "[T]he nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." *Callicutt v. Prof'l Servs. of Potts Camp Inc.*, 974 So. 2d 216, 220 (¶16) (Miss. 2007).  Because Faulkner does not know why Mrs. Burns fell, he cannot establish the proximate cause of her fall.

¶17.     Additionally, in his affidavit, Ramsey opined that "the steep pitch of the stairway and

---

[2] According to Faulkner, Mrs. Burns's back was to him when she fell.

the improperly constructed handrails . . . caused Mrs. Burns to fall." However, during his subsequent deposition, he testified that he "really d[id]n't know why she fell exactly and at what step, but she lost her balance and she fell." Ramsey's opinion that Mrs. Burns "lost her balance" was based on his conversation with Faulkner and Faulkner's assumption that Mrs. Burns "lost her footing." Ramsey speculates that because she lost her balance and fell, it must have been due to the stairway configuration. He testified as follows:

[Defense Counsel]    And looking at paragraph 7 [of your affidavit], your interview of Mr. Faulkner who observed M[r]s. Burns start to descend the stairs and then stumble and fall, how do you know she stumbled?

[Ramsey]    That's what he told me.

[Defense Counsel]    Again, how could he say she stumbled when he couldn't see her feet?

[Ramsey]    I don't understand that. It's just what I was told. He told me that she stumbled and fell.

. . . .

[Defense Counsel]    But, I mean, you're taking it a step further, saying, well, she stumbled. It had to be because of the steepness of the stairs. There are a lot of reasons she could have stumbled other than the incline of those stairs, you would agree with me on that?

[Ramsey]    I would agree with that.

[Defense Counsel]    And without someone seeing her feet, we're just guessing, aren't we?

[Ramsey]    I think you could tell if somebody stumbled without seeing the front of their feet.

[Defense Counsel]    But what caused them to stumble, there are a lot of –

7

| | |
|---|---|
| [Ramsey] | There's unknowns. |

¶18.   The record shows Ramsey took no action to rule out other factors that might have contributed to Mrs. Burns's fall.  Although in his affidavit, Ramsey opines that shoes, clothing, loose objects, or tripping hazards did not contribute to the fall, he admitted during his deposition that such opinions were based solely on information provided to him by Faulkner or the Burnses' counsel.  Indeed, Ramsey acknowledged that he never saw the shoes or clothing Mrs. Burns was wearing at the time of the fall and did not have pictures of the items.  Moreover, Ramsey acknowledged that he did not see any pictures of the stairs taken immediately after the fall in order to determine for himself whether any tripping hazards were present.  Thus, Ramsey's elimination of such factors was based, not on his independent investigation but, instead, on what Mrs. Burns's nephew and Mrs. Burns's attorney told him.  In other words, Ramsey eliminated those factors simply because he was told they did not contribute to Mrs. Burns's fall.

¶19.   Ramsey further testified that he did not believe Mrs. Burns fainted.  However, once again, he based this opinion on what he was told by Faulkner.  Ramsey testified as follows:

| | |
|---|---|
| [Defense counsel] | And if she fainted, she was gonna fall down the steps? |
| [Ramsey] | If she fainted, but she didn't faint. |
| [Defense counsel] | How do you know? |
| [Ramsey] | They said she tripped. |
| [Defense counsel] | How do you know?  Nobody saw her feet.  How do you know she tripped? |
| [Ramsey] | She fell forward. |

| | |
|---|---|
| [Defense counsel] | I mean, you're just speculating, you would agree with me on that? |
| [Ramsey] | She was stepping. She was descending down. I don't know at what step, but she was going down. |
| [Defense counsel] | But nobody saw her feet, so how do you know she was stepping down at the time she fell? |
| [Ramsey] | Mr. Faulkner was behind her, and he saw her going that way, going in that direction. |
| [Defense counsel] | But whether she was actually stepping when this accident happened, you don't know? She could have been standing on the steps and passed out as far as we know? |
| [Defense counsel] | You would disagree with that? |
| [Ramsey] | She could have. |

¶20. Importantly, Ramsey did not investigate or have knowledge of the medications Mrs. Burns was taking at the time of her fall. The record indicates that on the day of her fall, Mrs. Burns was taking Lortab and may have consumed alcohol. The following discussion occurred:

| | |
|---|---|
| [Defense counsel] | Based on your training, that raises a red flag, doesn't it, when somebody is taking pain medication . . . ? |
| [Ramsey] | Yes, sir. |
| [Defense counsel] | Because people – their gait is not as steady as other people, you would agree with that? |
| [Ramsey] | Yes, sir. |
| . . . . | |
| [Defense counsel] | And if someone's taking narcotic pain medication while they're descending some stairs, that would be something |

9

|               |                                                                 |
|---------------|-----------------------------------------------------------------|
|               | you would think would be important in regard to your accident investigation? |
| [Ramsey]      | Yes, sir.                                                       |
| [Defense counsel] | And you weren't told that she had been taking narcotic pain medication on the day of this accident, were you? |
| [Ramsey]      | Not that I recall.                                             |
| [Defense counsel] | And that's something that you would have wanted to know when you formulated your opinion, right? |
| [Ramsey]      | Yes, sir.                                                      |
| [Defense counsel] | And so you did not factor that in as to maybe other reasons maybe she would have fallen, did you? |
| [Ramsey]      | No, sir.                                                       |

¶21. When asked what evidence he had that the stairs caused Mrs. Burns to fall, Ramsey stated the stairs "[were] out of compliance." He explained that "when you step down at 47.11 degrees, it causes your leg to buckle, especially somebody that's shorter . . . [w]hen you descend down, you are gonna have the opportunity at that degree to fall." However, Ramsey admitted that no one told him they saw Mrs. Burns's leg buckle. The following discussion then occurred:

| [Defense counsel] | And under your theory for these stairs to have contributed to her fall, [Mrs. Burns] would have had to have taken a step and her leg would have had to have buckled for her to fall. |
|---------------|-----------------------------------------------------------------|
| [Ramsey]      | Right.                                                         |
| [Defense counsel] | But nobody saw that?                                          |
| [Ramsey]      | Could have, but he's not telling me.                          |

| [Defense counsel] | In . . . Faulkner's deposition, and the statement you took from him, he never told anybody he saw her leg buckle? |
|---|---|
| [Ramsey] | I never was told buckle. It was just stumble. |

¶22. When defense counsel suggested that Ramsey was "speculating that by stepping down, somehow [Mrs. Burns's] leg buckled, and at the same time . . . ignoring other possibilities," Ramsey did not disagree. Instead, Ramsey acknowledged that other factors such as "the Lortab, she fainted, she just wasn't paying attention and she missed a step" could have happened to cause Mrs. Burns to fall.

¶23. In *Rogers*, a case similar to the one before us, we affirmed the circuit court's entry of summary judgment based on insufficient evidence of causation. *Rogers*, 22 So. 3d at 1227 (¶29). In *Rogers*, Rogers died as a result of injuries he suffered after falling from a wall-mounted ladder. *Id*. at 1220 (¶1). A wrongful death action was thereafter filed and alleged that the design, construction, and installation of the ladder caused Rogers's injuries and ultimate death. *Id*. at 1221 (¶5).

¶24. The only eyewitness to the accident was Elbert Martin, who climbed the ladder immediately before Rogers. *Id*. at (¶4). Martin "saw Rogers's head appear at the roof hatch, but then it disappeared." *Id*. Martin did not know what caused Rogers to fall. *Id*.

¶25. A subsequent inspection by the Occupational Safety and Health Administration (OSHA) determined that the ladder did not comply with OSHA's specified dimensions. *Id*. at (¶5). The plaintiffs claimed that OSHA's regulations should have placed the defendant on notice that the ladder was defective and dangerous. *Id*. The plaintiffs further claimed the dimensional defects of the ladder and the placement of the ladder caused Rogers to fall. *Id*.

11

¶26. As evidence of causation, the plaintiffs relied on the testimonies of two expert witnesses, Dr. Hall and Dr. Shenefelt. *Id*. at 1223 (¶14). Dr. Hall, an architect, opined that the fall occurred as a result of the defective construction of the ladder. *Id*. at (¶15). However, Dr. Hall was unable to state that had the ladder met OSHA's guidelines, Rogers would not have fallen. *Id*. at 1224 (¶16). Furthermore, Dr. Hall testified that there were other conditions such as Rogers's personal health "or other things" that could have caused Rogers to fall. *Id*. Dr. Hall admitted that he did not know what caused Rogers's fall. *Id*.

¶27. Dr. Shenefelt, a mechanical engineer, made no independent investigation into the cause of the fall. *Id*. at (¶17). Instead, his investigation was limited to his discussions with plaintiffs' counsel. *Id*. Like Dr. Hall, Dr. Shenefelt opined that the ladder did not meet OSHA's regulations, but stated there were other things, such as a stroke, that could have happened to cause the fall. *Id*. Dr. Shenefelt made no effort to determine what Rogers was doing at the time he fell or how many times Rogers had used the ladder without incident. *Id*. at (¶18).

¶28. The circuit court granted summary judgment in favor of the defendant and found:

> even if the [c]ourt were to allow testimony about OSHA guidelines, the [p]laintiffs still cannot meet their burden of proof on causation because the [p]laintiff fail to present any witnesses who can testify as to how and why Rogers fell or that had the ladder met OSHA guidelines Rogers would not have fallen. Stated another way, no proof exists to establish a reasonable inference that any negligence on the part of the [d]efendants proximately contributed to the [p]laintiffs' damages. . . . The [p]laintiffs in this case present only conjecture and possibility as to the cause of Rogers's fall. Such speculation is never sufficient to sustain a verdict in a tort action because a mere scintilla of negligence cannot create a jury issue.

*Id*. at 1223 (¶13) (internal quotation marks omitted).

12

¶29. On appeal, we agreed and stated:

> [n]o one knows if Rogers slipped, missed a step, became dizzy, or simply fell for some other unknown reason totally unrelated to the dimensions of the ladder. Rogers's presence on the ladder at the time of his fall was not enough to say the ladder was the proximate cause of his fall when there was no evidence presented as to why Rogers fell. The [circuit] court's basis for granting summary judgment was that the [a]ppellants failed to show causation, and the [a]ppellants' experts do nothing to advance their theory of causation.

*Id*. at 1224 (¶20). We concluded that the experts' opinions were "a mere guess, speculation, or conjecture as to the element of proximate cause" and insufficient to create a genuine issue of material fact. *Id*. at 1227 (¶28). As a result, we affirmed the entry of summary judgment. *Id*. at (¶29).

¶30. Here, like the eyewitness in *Rogers*, Faulkner had a restricted view of the fall and did not know what caused the fall. Instead, Faulkner could only assume Mrs. Burns lost her footing.

¶31. Additionally, as in *Rogers*, Ramsey found the stairs and handrail did not comply with the applicable building codes and opined that such noncompliance caused Mrs. Burns's fall. Yet, like the experts in *Rogers*, Ramsey did not know why Mrs. Burns fell. Ramsey's finding that Mrs. Burns "lost her balance" was based on his conversation with Faulkner, who "assumed" his aunt lost her footing.

¶32. Moreover, like the experts in *Rogers*, Ramsey could not rule out other causes of the fall. He did not know or ask about her use of medication, despite admitting that such information would be an important factor in his investigation. He did not consider Mrs. Burns's use of Lortab and never revised or supplemented his opinion. Additionally, his only

13

source of information regarding potential tripping hazards came from his discussions with Mrs. Burns's counsel and her nephew, Faulkner, who was behind Mrs. Burns at the top of the stairs, and did not see her feet and therefore could not have seen the area where she fell.

¶33.   Importantly, like Dr. Hall in *Rogers*, Ramsey could not say that had the stairs been in compliance, Mrs. Burns would not have fallen.  Indeed, Ramsey admitted that if Mrs. Burns fainted, she would have fallen down the stairs even if the stairs were code-compliant. Additionally, Ramsey acknowledged that Mrs. Burns's use of pain medication would have affected her gait and steadiness, regardless of code-compliant stairs.

¶34.   When asked what evidence he had to support his theory of causation, Ramsey responded that the stairs were "out of compliance."   Although Ramsey explained that "step[ping] down" the noncompliant stairs would "cause[] your leg to buckle," he acknowledged there was no evidence to suggest that Mrs. Burns's leg actually buckled. Moreover, there is no evidence that Mrs. Burns was even taking a step down when she fell.[3] Thus, as in *Rogers*, it appears Ramsey ultimately relied upon Mrs. Burns's presence on the "out of compliance" stairway to support his opinions on causation.  However, as the record indicates:

> [n]o one knows if [Mrs. Burns] slipped, missed a step, became dizzy, or simply fell for some other unknown reason totally unrelated to the dimensions of the [stairs].  [Mrs. Burns's] presence on the [stairs] at the time of h[er] fall [i]s not enough to say the [stairs] was the proximate cause of h[er] fall when there was no evidence presented as to why [she] fell.

*Id*. at 1224 (¶20).

---

[3] Faulkner testified that Mrs. Burns "started down [the stairs]" and "made it to about the third step" and then "pretty much face plant[ed] down the rest of the stairs."

¶35. We find the Burnses have presented only conjecture and possibility as to the cause of Mrs. Burns's fall. Such speculation is insufficient to defeat a motion for summary judgment, because more than a scintilla of colorable evidence is required. *Van*, 767 So. 2d at 1018 (¶7). As the Burnses have failed to present sufficient evidence to prove the necessary element of causation, summary judgment was proper.

¶36. The Burnses suggest the circuit court "incorrectly viewed the evidence" since it "did not view the evidence in a light most favorable to [them]." The Burnses assert, "[h]ad the [circuit court] considered the evidence . . . in the light most favorable to them, [it] would have denied the motion for summary judgment because the expert evidence establishe[d] that the stairway pitch and non-complying stairway rails were a substantial contributing factor to Mrs. Burns's fall." However, as discussed, Ramsey's expert opinions were based on speculation and conjecture.

¶37. "Summary judgment may not be defeated through expert opinions that are not based on facts but instead are based on a guess, speculation, or conjecture." *Rogers*, 22 So. 3d at 1225 (¶21). Thus, summary judgment was granted not because the circuit court failed to view the evidence in the light most favorable to the Burnses, but because the Burnses failed to produce competent evidence of causation for the circuit court to consider.

    II.    *Whether the circuit court erred in striking Ramsey*.

¶38. The Burnses next argue the circuit court erred in striking their expert, Ramsey. "The admission of expert testimony is within the sound discretion of the [circuit] judge." *McKee v. Bowers Window & Door Co.*, 64 So. 3d 926, 931-32 (¶16) (Miss. 2011). "Therefore, the

decision of a [circuit] judge will stand unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion." *Id*. at 932 (¶16) (internal quotation marks omitted).

¶39. Mississippi Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

¶40. The Burnses assert Ramsey "applied reliable methods, techniques and principles to acquire sufficient data that should have been admitted into evidence." However, even if Ramsey's methods were reliable and his measurements were accurate, his testimony regarding causation and his overall opinion that Mrs. Burns fell because the stairs were too steep and narrow were not based on sufficient facts or data, as required by Rule 702, but, instead, on speculation. Indeed, Ramsey's opinion is "based upon [his] interview of the sole eyewitness to the accident, Faulkner. . . ." Even assuming Ramsey's testimony regarding the building codes and the dimensions of the stairs is correct, "there is no way to make the leap from the failure to meet [those building codes] to the proximate cause of [Mrs. Burns's] fall." *Rogers*, 22 So. 3d at 1125-26 (¶24).

16

¶41. Despite his determination that the stairs were not in compliance with the applicable building codes, Ramsey has not identified any facts which would allow him to connect the noncompliant stairway to how Mrs. Burns actually fell. Thus, any opinion Ramsey reached beyond the physical condition of the stairway was only through speculation and conjecture. As a result, the circuit court did not abuse its discretion in striking Ramsey's testimony.

CONCLUSION

¶42. As the Burnses are unable to establish the proximate cause of Mrs. Burns's fall, summary judgment was appropriate. Accordingly, we affirm the judgment of the circuit court.

¶43. **AFFIRMED.**

**LEE, C.J., IRVING, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**