# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00912-COA

**CASSANDRA JACKSON GREEN**                                          **APPELLANT**

**v.**

**SUPERMARKET OPERATIONS INC. D/B/A**                               **APPELLEE**
**McCOMB MARKET**

DATE OF JUDGMENT:              07/22/2020
TRIAL JUDGE:                   HON. DAVID H. STRONG JR.
COURT FROM WHICH APPEALED:     PIKE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        ROBERT C. BOYD
ATTORNEY FOR APPELLEE:         JASON RICHARD BUSH
NATURE OF THE CASE:            CIVIL - PERSONAL INJURY
DISPOSITION:                   AFFIRMED - 11/02/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., GREENLEE AND LAWRENCE, JJ.

### BARNES, C.J., FOR THE COURT:

¶1.     Cassandra Jackson Green filed a premises-liability suit against Supermarket

Operations Inc. d/b/a McComb Market (the Market), claiming she suffered a serious injury

after slipping and falling in some liquid while on the store's premises. After discovery, the

Pike County Circuit Court granted summary judgment in favor of the Market, finding Green

had failed to establish that the Market was negligent. Finding no error on appeal, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.     On May 23, 2015, Green and her daughter were shopping at the Market. Located near

the cash registers at the front of the store was "an ice machine with prepackaged bags of ice."

On her way to check out, Green slipped and fell in front of the ice machine. The store's

manager on duty, Gene Moak, was summoned, and he had Green fill out an accident report. For "location of accident," Green wrote: "by ice machine in front of register"; for "detailed description of the accident," she wrote: "white slime on floor. Slipped on it. Fell down on side." The time of incident was 3:10 p.m.

¶3. Green filed a complaint with the circuit court on May 18, 2018, contending she had "sustained serious injuries" as a result of the fall and asserting claims for negligence, vicarious liability, and gross negligence against the Market and other unnamed defendants. Green requested damages for past, present, and future medical expenses; past, present, and future physical disability; past, present, and future pain and suffering; mental anguish; punitive damages; and attorney's fees. The Market denied Green's claims of negligence, and the parties conducted discovery over the next two years, which included deposing Green, her daughter, and store employees.

¶4. In her deposition, Green said that she and her daughter entered the store to purchase a couple of items. Green was wearing flip flops. While walking to check out at the cash registers, Green claimed she "heard somebody yell, 'Look out,' and [she] slipped and fell." She did not see anything on the floor before she fell, but afterward she saw a "little puddle" of "a slimy, clear liquid." Falling on her right hip, Green stated that she "was hurting, but not – I didn't believe severely at the time." She also claimed that Moak had "told [her] that the refrigerator and all that was going to be changed out[;] they were fixing all that." Her daughter also averred that "there was water on the floor, and it was coming from a trail that was behind the ice freezer."

¶5. Moak acknowledged in his deposition that there would normally be a rug in front of the ice machine, but "a couple of months before [the incident], somebody had tripped over the rug, and so we put the wet floor signs out there."

Q. Okay. And why — why were wet floor signs kept near the ice machine essentially at all times?

A. It's just — it's just for safety. Safety precautions that people know that.

Moak did not remember telling Green that the ice machine needed to be fixed and denied that the ice machine had any issues or problems with leaks in May 2015. Moak also stated that the machine was typically only stocked at night between the hours of 9:00 and 10:00 p.m.

¶6. Store employee Jennifer Jones attested that wet-floor signs were put out only when the machine was being stocked. She could not recall if the signs were out when Green fell. Like Moak, she was not aware of any issues or problems with ice machine. Nor was Glen Weathersby, another store employee, who testified that "[i]t was usually just because of the ice falling out of the machine."

¶7. Moak subsequently attested in a January 2020 affidavit that he "diligently" checked the aisles in the store every hour while at work, "includ[ing] the front aisle that runs in between the ice machine and the cash registers." Approximately ten minutes before Green's accident, he stated that he would have checked the area and "did not see any water, liquid or anything on the floors." Had he seen any liquid, he "would have cleaned it up." Moak had initialed the store's Hourly Aisle Maintenance form that day, showing that he had checked the store's aisles, including the perimeter, at 3:00 p.m. The maintenance form also indicated that one of the store's assistant managers, Gary Beard, had checked the aisles each hour from

3

6:00 a.m. to 2:03 p.m. that day.

¶8. On April 20, 2020, the Market filed a motion for summary judgment, asserting that Green had presented "no evidence that [the Market] actually caused any liquid to be on the floor" or that its "employees knew about the liquid or that it had been there long enough that they should have known about it." Responding to the motion, Green noted that in the Market's responses to requests for production, the Market indicated that the store's surveillance video could no longer be accessed because a new camera system had since been installed. Green argued that because the store's policy was to send the video to its home office after an incident, other copies should be available; thus, it became a "spoliation issue" for a jury to determine. A hearing on the summary judgment motion was held on June 29, 2020, wherein Green's attorney reasserted the argument that it was "troublesome" that surveillance video of the incident was not available.

¶9. On July 22, 2020, the circuit court entered a final order granting the Market's motion for summary judgment. The court found that Green, an invitee, had provided "no evidence that the [M]arket caused a wet spot on the floor or acted in any way that fell below the standard of care." The court further determined that the Market had no knowledge, either actual or constructive, of the "wet condition." The court did not address the spoliation issue.

¶10. Green appeals from the court's judgment, arguing that (I) "[t]he grant of summary judgment was improper [because] there was sufficient direct and circumstantial evidence of negligence," and (II) the spoliation of the store's surveillance video evidence precluded summary judgment.

4

**STANDARD OF REVIEW**

¶11. A trial court's grant of summary judgment is reviewed de novo. *Est. of Ellis v. MMC Materials Inc.*, 311 So. 3d 691, 695 (¶16) (Miss. Ct. App. 2021) (citing *Burns v. Gray*, 270 So. 3d 1084, 1088 (¶13) (Miss. Ct. App. 2018)). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*.; *see also* M.R.C.P. 56(c).

> This Court must view the evidence in the light most favorable to the party against whom the motion has been made. However, the party opposing summary judgment may not rest upon mere allegations or denials of his pleadings, but his response must set forth specific facts showing that there is a genuine issue for trial. The non-moving party's claim must be supported by more than a mere scintilla of colorable evidence; it must be evidence upon which a fair-minded jury could return a favorable verdict.

*Burns*, 270 So. 3d at 1088 (¶13).

**DISCUSSION**

I. **Whether direct or circumstantial evidence created a genuine issue of material fact precluding summary judgment.**

¶12. The circuit court found that Green was "a business invitee of the [M]arket at the time of the incident," and the Market does not challenge this finding on appeal. "An invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage." *Page v. Biloxi Reg'l Med. Ctr.*, 91 So. 3d 642, 644 (¶10) (Miss. Ct. App. 2012) (quoting *Corley v. Evans*, 835 So. 2d 30, 37 (¶21) (Miss. 2003)). "A landowner owes a business invitee a duty of reasonable care for the invitee's safety." *Id*. (quoting *Hudson v. Courtesy Motors Inc.*, 794 So. 2d 999, 1003 (¶9)

5

(Miss. 2001)).  The landowner "must keep [the] premises in a reasonably safe condition" and has "a duty to warn of known dangerous conditions . . . not readily apparent but . . . discover[able] by reasonable inspection of the premises." *Id*.  However, "[m]ere proof of the occurrence of a fall on a floor within the business premises is insufficient to show negligence on the part of the proprietor."  *Hearn v. Square Prop. Invs. Inc.*, 297 So. 3d 292, 295 (¶10) (Miss. Ct. App. 2020) (internal quotation marks and citation omitted).

¶13.    In a premises-liability action, "the plaintiff 'must prove one of the following to recover:  (1) a negligent act of the defendant caused her injury; (2) the defendant had actual knowledge of the dangerous condition and failed to warn her; or (3) . . . the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant.'"  *Id*. at 295 (¶11) (quoting *Rod v. Home Depot USA Inc*., 931 So. 2d 692, 694-95 (¶10) (Miss. Ct. App. 2006)).  In granting summary judgment, the circuit court concluded that Green had failed to demonstrate the Market either "caused a wet spot on the floor" or had actual or constructive knowledge "of a wet condition."  Green argues the court's ruling was in error, as she provided both direct and circumstantial proof that there was a known dangerous condition "due to the acts/omissions of the [Market]."  Thus, she contends that she did not have to prove the Market had prior notice or how long the water was on the floor.

¶14.    One of the cases Green relies on is *Anderson v. Wal-Mart Stores E. L.P.*, No. 2:11-cv-223-KS-MTP, 2013 WL 1363702, at **1-3 (S.D. Miss. Apr. 3, 2013), in which a plaintiff alleged that she slipped and fell over a piece of metal placed on Wal-Mart's floor by employees.  However, the plaintiff could offer no direct evidence of how the metal piece got

6

on the floor, and Wal-Mart denied any role. *Id*. at *3. Wal-Mart filed a motion for summary judgment, which the plaintiff opposed by arguing there was sufficient circumstantial evidence that the metal was likely some shelving that the Wal-Mart employees were handling on the day of the accident. *Id*. The trial court found the circumstantial evidence in the record sufficient to create a jury issue and denied Wal-Mart's motion for summary judgment. *Id*. at *8.

¶15.    Green also cites *Elston v. Circus Circus Mississippi Inc.*, 908 So. 2d 771 (Miss. Ct. App. 2005).  The plaintiff in *Elston* slipped in a puddle of water in the lobby of a casino. *Id*. at 772 (¶3).  The plaintiff's fall occurred near some potted plants, which an employee said were typically watered on the day of the accident, although he admitted he did not see them being watered that day. *Id*. at 772 (¶¶3, 5).  The circuit court granted the casino's motion for summary judgment, concluding that "the Elstons did not present any evidence beyond speculation connecting the water on the floor to the act of the plants being watered." *Id*. at 773 (¶6).  This Court reversed the court's ruling, finding the "evidence to be beyond speculation and sufficient for a jury to conclude that Mrs. Elston's injury was caused by a dangerous condition that Gold Strike created." *Id*. at 774, 776 (¶¶12, 18).[1]

¶16.    Green is correct that "negligence of the defendant and notice to him may be found

---

[1] Green also cites *Clinton Healthcare LLC v. Atkinson*, 294 So. 3d 66 (Miss. 2019), to support her argument, and the dissent would agree that *Clinton* supports a finding that the court improperly granted summary judgment.  However, we find *Clinton* factually distinguishable from the present case, as there was supporting testimony in that case by employees that residents had recently showered near where the plaintiff slipped and that the area beneath her was damp. *Id*. at 68-69 (¶3).  Here, as we will discuss further, Green failed to submit admissible evidence that the Market was negligent.

from circumstantial evidence of adequate probative value." *Higginbotham v. Hill Bros. Const. Co.*, 962 So. 2d 46, 58 (¶28) (Miss. Ct. App. 2006) (quoting *Miss. Winn-Dixie Supermarkets v. Hughes*, 247 Miss. 575, 584, 156 So. 2d 734, 736 (1963)). "Moreover, circumstantial evidence may be utilized to prove that a defective condition 'was one of which the proprietor either had actual notice or the condition existed for such a length of time that, in the exercise of reasonable care, he should have known of it.'" *Id*.

¶17.    "However, the circumstantial evidence must be such that it creates a legitimate inference that places it beyond conjecture." *Id*. (quoting *Herrington v. Leaf River Forest Prods.*, 733 So. 2d 774, 777 (¶8) (Miss. 1999)). Green and her daughter testified that there was water on the floor; this assertion was also reflected in the accident report Green filled out. However, none of the employees testified they were aware of any water on the floor, either before or after her fall, and even Green admitted she never saw water before falling. Presuming there was water on the floor, as we must for the purposes of summary judgment,[2] we agree with the Market that "there is no admissible evidence (whether direct or circumstantial) that Supermarket Operations caused [the] water or liquid to be on the floor."

¶18.    Green also contends the testimony by the employees that a rubber mat had previously been located in front of the machine, as well as "wet floor" signs, indicated the Market "had a known problem with the bagged ice machine." Although Green has made vague assertions regarding the condition of the machine and its maintenance history, specifically the lack of

---

[2] *See Downs v. Choo*, 656 So. 2d 84, 85 (Miss. 1995) (holding that when reviewing a court's grant of summary judgment, our appellate courts "will presume that all evidence in the non-movant's favor is true").

maintenance records, the consistent testimony by all employees was that there was no problem with the machine. And, again, we find there was no evidence presented that any store employee had any actual or constructive knowledge of any water. "Constructive knowledge is established where the condition is shown to have existed for such a length of time that the operator, through the exercise of reasonable care, should have known of its existence." *Hearn*, 297 So. 3d at 296 (¶14). "[T]he court will not indulge presumptions for the deficiencies in plaintiff's evidence as to the length of time the hazard existed; therefore, the plaintiff must produce admissible evidence as to the time period in order to establish the operator's constructive knowledge." *Id*. "The plaintiff must present specific proof as to the relevant actual length of time." *Id*. The hourly maintenance form indicated that Moak had inspected the aisles only ten minutes before Green's fall, and both Moak and the current store manager, John Hillyard, claimed that if there were water on the floor, it would have been immediately cleaned up. The employees also stated that the ice machine was typically stocked at night, not during the hours when Green's fall occurred.

¶19. We therefore affirm the court's determination that Green failed to provide sufficient evidence to survive summary judgment that the Market either had caused the condition or had knowledge of the condition.

### II. Whether the circuit court erred in failing to address the spoliation issue.

¶20. During discovery, Green requested the store's surveillance video of the incident. The Market responded that the company did not have the video, noting the store "got a new camera system" since the incident and could "no longer access video from 2015." Green

9

argues that evidence showed that when an accident occurs, the store's policy was to send two copies of the surveillance video to the home office; yet the Market could not produce a copy of the video. Green thus contends "[t]he issue of the loss of 3 copies of the crucial evidence of the surveillance video is alone sufficient to prohibit the entry of summary judgment," and "there could/should be an adverse inference jury instruction after the proof of the missing evidence is established at trial."

¶21.    Admittedly, the "Customer Accident Report" did note that the procedure was to send the report to the home office, along with any logs, photos, *and video*. However, Moak explained in his deposition, "Normally, I'll hear back from the person that slipped and f[e]ll, and *then* I would send [the accident report into] our home office[;] . . . after that, I'd link the videos and send all the videos in too." (Emphasis added). *See Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (recognizing "[a] party's duty to preserve evidence comes into being when the party *has notice that the evidence is relevant to the litigation* or should have known that the evidence may be relevant" (emphasis added)). Green acknowledged that when the accident occurred, she did not think she was injured severely. She told employees, "I'm okay," and there is no evidence she sought medical attention immediately after the fall. Instead, Green waited three years to notify the store regarding her alleged injuries—when she filed her complaint just within the applicable statute of limitations. We therefore cannot say that the Market had notice of any pending litigation requiring the preservation of the relevant video evidence.[3]

---

[3] While there are some instances where "triable issues of fact" regarding spoliation of evidence have been found to preclude summary judgment, *see Renner v. Retzer Res. Inc.*,

¶22. To support her claim, Green cites *Clinton Healthcare LLC v. Atkinson*, 294 So. 3d 66, 68 (¶1) (Miss. 2019), which concerned a nursing home resident who "slipped on a liquid substance at Clinton Healthcare and injured her knee as a result." Three nursing home employees noted dampness on the floor under the resident when coming to her aid, and other employees reviewed surveillance video but noted that the video did not show her fall. *Id*. at 68-69 (¶¶3-4). The video was erased after ten days once storage on the device was full. *Id*. at 69 (¶4). "Atkinson filed a motion for spoliation of evidence and a request for the spoliation inference regarding the video," as well as "a motion for partial summary judgment as to liability." *Id*. at 70 (¶5). "The trial court granted Atkinson's motion for spoliation," finding "'the appropriate inference instruction shall be submitted at the trial,' denied Clinton Healthcare's motion for summary judgment, and granted Atkinson's motion for partial summary judgment as to liability." *Id*.

¶23. Unlike the present case, however, the *Atkinson* court determined there was sufficient evidence of liability to survive summary judgment. *Id*. at 72 (¶12). The supreme court also found the trial court erred in its ruling on spoliation, reasoning:

> Mandating that a spoliation instruction be given at trial before a trial even happens, as occurred in this case, was inappropriate, as the trial court does not know what evidence regarding spoliation will be presented to the jury, and thus cannot know whether the evidence at trial will support the instruction.

*Id*. at 73 (¶16). As we have already found, Green did not provide sufficient evidence to

236 So. 3d 810, 816 (¶¶22-24) (Miss. 2017), this is not such a case. There is no question of the Market's being aware of pending litigation or having any reason to send the surveillance video to the home office as outlined in the customer accident report. As noted, Green did not contact the Market after the accident for almost three years, by which time the video was unavailable.

survive summary judgment that the Market was negligent. In *Robinson v. Martin Food Stores Inc.*, 231 So. 3d 1060, 1064 (¶10) (Miss. Ct. App. 2016), a factually similar slip-and-fall case, this Court recognized, "For purposes of summary judgment, spoliation of evidence, standing alone, is not enough to allow a party who has produced no evidence—or utterly inadequate evidence—in support of a given claim to survive summary judgment on that claim." *Id.*

¶24. Accordingly, we find the unavailability of the video, coupled with Green's failure to demonstrate that the Market was negligent, does not allow her claim of spoliation to survive summary judgment.

¶25. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND McCARTY, JJ.**

**WESTBROOKS, J., DISSENTING:**

¶26. One of the issues Green raises on appeal is that she presented evidence to the trial court that created a genuine issue of material fact. The majority holds that she did not. I disagree and find that the trial court erred by granting summary judgment.

¶27. When one party moves for summary judgment, we are charged with reviewing evidence in the light most favorable to the nonmoving party—in this case, Green. *Hardy ex rel. Hardy v. K Mart Corp.*, 669 So. 2d 34, 37 (Miss. 1996). And "issues of fact sufficient to require a denial of a motion for summary judgment are obviously present where one party swears to one version of the matter in issue and another says the opposite." *Miller v. Meeks*,

12

762 So. 2d 302, 304 (¶3) (Miss. 2000). An issue of fact may be shown

> where there is more than one reasonable interpretation of undisputed testimony, where materially different but reasonable inferences may be drawn from uncontradicted evidentiary facts, or when the purported establishment of the facts has been sufficiently incomplete or inadequate that the trial judge cannot say with reasonable confidence that the full facts of the matter have been disclosed.

*Id.* at 304-05 (¶3).

¶28.    In response to the Market's motion for summary judgment, Green submitted ample circumstantial evidence of the Market's negligence related to the dangerous condition on the floor. Such evidence included Green's testimony that just prior to her fall, someone told her to "watch out," and just after she fell, she saw a puddle under her and a trail of liquid leading to the ice freezer. Green also stated that a store manager told her there were problems with the freezer, and she overhead him instructing another employee to clean up the puddle. The manager later denied making either of these statements, although he did say that repairs had been made in the past because ice would thaw and leak from the freezer. Green's daughter testified that there was a trail of clear liquid coming from the freezer. Another employee said that the ice routinely fell from the freezer onto the floor, requiring regular clean-up. There was testimony that a rubber mat was normally in front of the freezer to prevent slipping, but it was missing that day, and although an employee could not recall whether the sign was in place when Green fell, a "wet floor" sign was often in front of the freezer, which Green points to being indicative of a problem with the freezer. I believe the testimony set forth by the parties "produced sufficient evidence such that a jury could infer" that the Market was negligent. *See Clinton Healthcare LLC v. Atkinson*, 294 So. 3d 66, 72 (¶12) (Miss. 2019).

13

¶29. In *Clinton Healthcare*, our Supreme Court was asked to review the denial of Clinton Healthcare's motion for summary judgment. *Id.* at 71 (¶11). Like the case currently before us, the allegations in *Clinton Healthcare* arose when Atkinson, a visitor to the facility, slipped and fell. *Id.* at 66 (¶1). Clinton Healthcare presented testimony from multiple employees that the floor in front of the shower room where Atkinson fell was not wet. *Id.* at 69 (¶3). There was additional testimony that a sheet placed under Atkinson after her fall was not wet. *Id.* at 68-69 (¶3). Atkinson countered through testimony from other facility employees who stated that there was a clear liquid on the floor and that a "wet floor" sign was present. *Id.* There was also testimony that at least one resident had showered just before Atkinson fell, that wheelchairs sometimes dripped water, and residents and/or wheelchairs were not thoroughly dried after showers. *Id.* at 71 (¶¶11-12). In upholding the denial of summary judgment, the Supreme Court stated that "Atkinson need not *definitively* prove the exact identity of the substance or how it came to be on the floor. Negligence 'may be found from circumstantial evidence of adequate probative value.'" *Id.* at 72 (¶12) (quoting *Miss. Winn-Dixie Supermarkets v. Hughes*, 247 Miss 576, 156 So. 2d 734, 735 (1963)). And Atkinson "produced sufficient evidence such that a jury could infer that Clinton Healthcare created the situation." *Id*.

¶30. Applying *Clinton Healthcare* to the instant situation, the fact that the Market presented testimony that the hourly maintenance check did not indicate any liquid near the freezer cannot be the basis for summary judgment. At the very least, testimony relied on by Green and discussed above should have raised doubt in the mind of the trial court. *See*

14

*Renner v. Retzer Res. Inc.*, 236 So. 3d 810, 815 (¶21) (Miss. 2017) (When doubt is present about whether any genuine issues of material fact exist, the trial court should deny the motion for summary judgment and permit a full trial.).

¶31.    The majority attempts to distinguish *Clinton Healthcare* on the basis of employee testimony.  In both cases, there was employee testimony in support of and against the injured invitee.  Whereas the employee testimony in *Clinton Healthcare* was more direct as to the events surrounding Atkinson's injury, the Market employees presented testimony regarding circumstantial evidence that was relevant to Green's theory of recovery.  But the testimony of Market employees still supports Green's theory that it was more probable than not that there was water from the ice freezer on the floor when she fell.  To the extent witness credibility or factual discrepancies are at issue, to allow the trial court's decision to stand invades the province of the jury.  *See Morris v. State*, 303 So. 3d 9, 17-18 (¶25) (Miss. Ct. App. 2020) (Even when a witness is impeached in some manner, "the jury remain[s] the ultimate decision-maker as to what weight and worth to give her testimony."); *Sneed v. State*, 31 So. 3d 33, 44 (¶36) (Miss. Ct. App. 2002) ("A conflict in the evidence creates a factual dispute which the jury resolves[.]").

¶32.    In *Johnson v. State*, 23 So. 2d 499, 500 (Miss. 1945), the Mississippi Supreme Court stated:

> It was long ago held by this Court in the case of *Browning v. State*, 33 Miss. 47, 78 [1856], citing *Cicely v. State*, 13 Smedes & M. 202, 211 [1849], and the principle has been uniformly adhered to since that time, that the sufficiency of circumstantial evidence is peculiarly for the determination of the jury, "because it is always solemnly to be weighed and acted upon by their understandings and consciences, and is, from its very nature, the subject of

15

inferences and conclusions in their minds[.]"

I recognize that some cases cited above are not recent and are criminal in nature, but that does not bar application of the rule of law set forth therein. The testimony and other circumstantial evidence presented by the parties in this instance demands that Green's case be decided by the finder of fact—in this case a jury.

¶33.    For the foregoing reasons, I respectfully dissent from the majority opinion and believe this case should be reversed and remanded for a jury trial.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**